DANIEL ALGER, CHARLES S. RICE and SAMUEL SEARS, Superintendents of the Poor of Lewis county, *vs.* SHERMAN MILLER.

An action may be brought by superintendents of the poor, in their individual names with the addition of their name of office.

It being the duty of a father to support and care for his lunatic daughter, which duty, if he be of sufficient ability, he is compellable to perform, when it becomes necessary to prevent the burden of her maintenance from being cast upon the town, he may either keep her at his own house, or he can make a valid contract with some one else to keep her, for him, elsewhere.

Where the father of a lunatic who was not a pauper for whose support the county was chargeable, but whom he was himself bound to support and maintain, took her to the county poorhouse, under an agreement made by him with the superintendents of the poor, to pay them a specified sum per week, for her board; *Held* that this was a valid contract; and that the father was liable thereon.

Such a contract, made by superintendents of the poor of a county in which the poor are not a county but a town charge, is not against public policy, or contrary to any positive statute; and although it is in excess of the superintendents' authority, is neither criminal nor corrupt.

A father having left his lunatic daughter at the poorhouse, under such an agreement, the superintendents of the poor have a right to keep her, until he shall take her away, or it becomes proper to discharge her. A mere notice from him to the superintendents that he will be no longer responsible for her support, given at a time when she is in a condition rendering it dangerous to set her at large, will not relieve him from liability.

A lunatic kept in a county poorhouse or asylum by contract, alone, may be taken away from there without an order from a county judge or judge of the Supreme Court, directing it, pursuant to the statute. (*Laws of* 1865, *ch.* 353, § 3.)

That statute was intended to embrace only those persons who are in an asylum under the authority conferred upon the officers to confine them there, in the performance of their official duties.

APPEAL from a judgment of the county court of the county of Lewis, affirming a judgment rendered before a justice, in favor of the plaintiffs.

The plaintiffs sued in their individual names, and in the name of their office, in a justice's court, to recover of the defendant for the keeping, at the asylum connected with the poorhouse of Lewis county, of his daughter, who was

insane. At the joining of the issue the defendant set up as defenses, that the plaintiffs had no legal capacity to sue for the cause of action set forth in the complaint; that they had no power to make the pretended contract, and that it was illegal and void; that the plaintiffs had not supported or maintained his daughter at his instance or request, during the period claimed for, either in their individual or official capacity, and that nothing was due from him on that account; and also a general denial of the complaint.

On the trial it was admitted that Charlotte Miller was the daughter of the defendant, of the age of thirty-three years; had always been a resident of the town of Leyden, Lewis county; was insane, and had been for five years then last past; that she was brought to the poorhouse insane asylum of that county on the 17th of December, 1864, and the proof showed that she was brought there by the defendant, upon an agreement made for him, by his son, with the then superintendents of the poor, by which she was to be kept there for $2.50 per week, her clothes to be furnished by the defendant. It was also admitted that she had remained at the asylum until the time of the trial, and and had been cared for and supported there, except for clothing. That the present acting superintendents of the poor were the plaintiffs. That on or about the 10th of January, 1866, the defendant gave superintendent Alger notice that he would not pay any more for Charlotte's support in said county-house; and that at a regular meeting of the superintendents, held in the forepart of February, 1866, Alger communicated the notice to the superintendents. It was also admitted that each town in the county of Lewis is chargeable for the support of its town poor. The defendant, at the time he gave the notice that he would not longer pay for the support of Charlotte, did not, nor did he at any other time, offer to take her away, but he paid for her keeping up to that time. It appeared that from the first of January, 1866, her condition

Alger *v.* Miller.

was such that it was dangerous to set her at large; that she had no property or means of supporting herself; but that her father had a farm of about sixty acres in Leyden, and some stock and personal property. It also appeared that about the first of January, 1866, the defendant notified the overseer of the poor of the town of Leyden, that he should pay nothing more for the support of Charlotte, at the county-house, and that the town of Leydon must support her.

When the plaintiffs rested, the defendant moved for a nonsuit, for the reasons, 1st. That the persons described in the complaint as superintendents of the poor, had no power individually, or in an official capacity, to make the contract claimed to have been made; and 2d. That Charlotte being a pauper, having a settlement in the town of Leyden, that town only was liable to the county for her support at the poorhouse. The justice denied the motion, and after the testimony was closed, rendered judgment for the plaintiffs for $150 damages, (being at the rate of $2.50 per week from the time the defendant gave such notice, until the commencement of the action,) together with costs.

The county court, on appeal, affirmed the judgment.

*C. D. Adams*, for the appellant.

*C. E. Stephens*, for the respondents.

*By the Court*, FOSTER, J. It is claimed that the plaintiffs should have sued in their corporate name alone, of "Superintendents of the poor of the county of Lewis," and that they had no right to sue in their individual names, with the addition of the name of their office.

The statute, in their case, and in contradistinction from that of some other local officers of towns and counties, has in express terms created them "a corporation, with the

usual powers of a corporation for public purposes." (2 *R. S.* 841, § 16, *5th ed.*) And in the case of *Pomeroy* v. *Wells,* (8 *Paige,* 406,) the chancellor said that the superintendents of the poor should sue in their corporate name, and not in their individual names, describing themselves as superintendents of the poor of the county. That question, however, was not expressly taken by the demurrer to the bill of the plaintiffs, and it does not appear to have been argued before him. He did not seem to consider that question as very important, and suggested, that if that were the only difficulty in the case, it could be obviated by an amendment.

In *Van Keuren* v. *Johnston,* (3 *Denio,* 183,) where that was the only question under consideration, the court held unanimously the other way, and also decided that the superintendents might bring an action either in their corporate name alone, or in their individual names, with the addition of their name of office; and in *Hayes* v. *Symonds,* (9 *Barb.* 260,) and in *Paddock* v. *Symonds,* (11 *id.* 117,) the court in this district allowed actions to be maintained against superintendents of the poor, in their individual names, with the addition of their name of office, for acts done in their corporate capacity; and the same was the case in *Norton* v. *Rhodes,* (18 *Barb.* 100.) These decisions are, I think, in conformity with the statute. (2 *R. S. part* 3, *ch.* 8, *title* 4, *art.* 4, §§ 92, 93, 94, 96, 100.) And it will be seen by reference to the notes of the revisors to this article, (3 *R. S.* 757, 2*d ed.*) and in reference to section 99, requiring the nonjoinder of the names of any such officers as defendants to be pleaded in abatement, that they say: "It must often be difficult to ascertain the names of all the supervisors, county superintendents," &c., showing that the superintendents of the poor were intended to be included in all the provisions of that article. I think the action was well brought in the names of the superintendents, with the addition of their name of office.

Alger *v.* Miller.

The more important questions in the case are, first, whether the contract between the plaintiffs and the defendant was valid, and if it was, did the liability of the defendant continue after he gave notice that he would no longer be responsible for the keeping of his daughter.

Charlotte Miller was not a pauper, and certainly not a pauper for whose support the county of Lewis was chargeable. She was a resident, and always had been, of the town of Leyden, and that town alone was liable for her support, if a pauper. But she was not a pauper. The defendant, as her father, was liable for her support; he was of sufficient ability, and the whole proceeding shows that what was done in regard to her, on the part of the superintendents as well as that of the defendant, did not take place because she was considered a pauper, but in pursuance of contract; and nothing was done in reference to her which the statute requires to be done in the case of alleged paupers, either to declare her to be one, or to *charge* her father or the town or county with her support as such.

It was the duty of the defendant to support and care for his lunatic daughter, and the law had provided for the enforcement of that duty, if it became necessary to prevent the burden of her maintenance from being cast upon the town of Leyden. Certainly, so far as he was concerned, he could keep her at his own house, or he could make a valid contract with some one else to keep her for him, elsewhere. This duty is clearly declared by statute. (2 *R. S.*, 882, § 2, *5th ed.*) The 3d section of the same act gave the overseers of the poor the same remedies to compel him to confine and maintain her, and to collect the costs and charges of her confinement, as is given in the case of poor and impotent persons.

And the 14th section conferred upon the superintendents of the poor all the power and authority in such cases, that is given to the overseers of the poor of any town; and

this irrespective of whether such lunatic, if a pauper, would be chargeable to the town or to the county.

Under these circumstances the superintendents and the father contracted for the confinement and keeping of the lunatic, at the asylum attached to the county poorhouse, which is kept at the expense of the county, and in pursuance of which contract the lunatic was furnished with board and care at the expense of the county. I have no doubt that the contract on the part of the superintendents was in excess of their authority, but it was neither criminal nor corrupt.

It was not against public policy, or contrary to any positive statute. It had in view the attainment of the same end, by contract, which would have otherwise been reached by enforcing the provisions of the statute. In *The State of New York* v. *City of Buffalo*, (2 *Hill*, 434,) it appeared that the commissary general had loaned arms, owned by the State, to the city of Buffalo, which were not returned. An action was brought by the State to recover their value, and a recovery was had, although the court said, at page 439, the loan, under the circumstances, might well be regarded simply in the light of an excess of authority, rather than a criminal and corrupt violation of law and duty.

It was held in *Brewster* v. *Colwell*, (13 *Wend.* 28,) that trustees of a school district, when sued as such, might become the indorsees of a promissory note, executed by the plaintiff, and might set it off in the action against them. And commissioners of highways may loan out public moneys in their hands, and take a promissory note therefor, and maintain an action upon it, in their individual names as commissioners of highways. (5 *Hill*, 215.) While the contract continued, the defendant received the benefit of it by being otherwise relieved of the care and expense of the confinement and keeping of his daughter; and there is no good reason why he should not perform it, on his part. And I see no reason why the county may not

Alger *v.* Miller.

recover the amount justly due to it, in the name of these plaintiffs, as the trustees of an express trust, the contract having been made with them. The remaining question is, did his liability continue after he gave the superintendents of the poor notice that he would not be further responsible, and notified the overseer of the poor of the town of Leyden to take the charge of her.

He took her to the county-house, under the agreement, and left her there, and he has never taken her away, or offered to do so, and at the time when he refused to be further liable, she was in a condition rendering it dangerous to set her at large. I think the counsel is mistaken in supposing that she could not be taken away from the asylum without an order from a county judge or judge of the Supreme Court directing it, pursuant to the statute. (*Laws of* 1865, *ch.* 353, § 3.) The language of that section is general enough to include all lunatics confined in such places, but when read in connection with the statute which it amends, and where the persons confined by these statutes are considered, I think it was intended to include the cases of those who were there under the authority conferred upon the officers to confine them there, in the performance of their official duties; and not to cases of persons kept there by contract alone.

The defendant took her to the poorhouse, and could take her away when he chose. It was his duty to do so, if he would not pay for her further keeping. He did not do so, but left her there.

It was unsafe for the plaintiffs then to set her at large, and I think they had a right to keep her, under the contract, until the defendant should take her away, or it became proper for them to set her at large.

The judgment of the county court should be affirmed.

Judgment affirmed, (all concurring.)

[ONONDAGA GENERAL TERM, April 7, 1868. *Foster, Morgan* and *Mullin* Justices.]