## John McNulta, Receiver,

### v.

## John Ensch.

### Filed at Springfield March 31, 1890.

1. Negligence—*railroads—stopping trains at passenger stations— giving passengers proper time—and herein, as to stations at which the particular train is not bound to stop.* If a conductor of a fast train receives fare from passengers to a station at which such train is not advertised or scheduled to stop, it becomes the duty of the conductor to notify the passengers so paying, that the train will not stop at that station, or to carry them to such station and then give them sufficient time to get off in safety.

2. A railway company, whose duty it was to stop its train within eight hundred feet of a railroad intersection, on approaching such intersection stopped momentarily at a station platform about five hundred feet from the same, such train not being obliged to stop at that station, and then started with a violent jerk, whereby a passenger was injured while attempting to get off, and then stopped again some fifty or sixty yards nearer the intersection : *Held,* that evidence of such facts was sufficient to authorize an instruction based on the neglect to stop the train at the station a sufficient time to enable the passenger to get off in safety.

3. Where a train is not bound to stop at a particular station to receive or discharge passengers, but is required by law to stop within eight hundred feet of a railway intersection, some five hundred feet beyond such station, but the proof showed that the conductor received fare to such station, and that there were passengers for that station, and on approaching the station the whistle was sounded and the speed of the train slackened, and the train was finally stopped, it was *held,* that a passenger on the train, in the absence of a contrary announcement, had the right to act on the belief that the stop was to enable passengers to get off, and that the company was liable for an injury to a passenger caused by starting the train before allowing a reasonable time to get off.

4. In case the conductor announces a station, at which his train is not bound to stop, just before the same is reached, and if, following such announcement, the train actually does stop at the station platform, a passenger for such station would be justified in presuming it was for the purpose of discharging him there, and in proceeding to get off; and if, while it is so stopped, and with due promptness and care, the passenger attempts to get off, and is thrown down and injured by the

starting up of the train, that presumption would become conclusive on the company. It could not avoid liability for such injury by stopping the train again a few rods further on.

5. Where the ordinary signal is given on approaching a station, and it is announced in the usual manner by the brakeman or conductor, so as to lead a passenger to believe the train was going to stop at such station, and it does stop there, the company can not avoid liability to the passenger for an injury caused by the train starting before he has time to get off, by showing those in charge of the train intended to go on further before discharging passengers, of which no notice was given.

6. RECEIVER—*judgment against him—only in his fiduciary character.* A judgment against a receiver creates no personal liability against him, and it is to be so entered as to be enforced only out of the funds of the corporation properly chargeable to him in the capacity of receiver. It is error to render judgment against him individually, and no award of execution should be made. The judgment must be against him as receiver, and be made payable out of the funds held by him as such, in the due course of administration.

7. SAME—*liability to suit—questioned by plea—waiver.* An administrator or receiver, when sued in his representative capacity, admits that he is rightly so sued unless he files a plea denying the same. If he makes no objection to the suit against him in his representative capacity, before or on the trial, he will be precluded from afterward urging that he was not rightly sued.

8. NEW TRIAL—*disregarding erroneous instruction.* A new trial will not be granted because the jury may disregard an erroneous instruction, as no legal wrong is thereby done to the party at whose instance the instruction was given.

9. PRACTICE IN THE SUPREME COURT—*error after verdict—remandment with direction to enter the proper judgment.* Where the only error in a case consists in the form and effect of the judgment, a *venire facias de novo* will not be awarded on a reversal, but the cause should be remanded, with instructions to the trial court to enter the proper judgment.*

WRIT. OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

---

* See *Meyer* v. *Village of Teutopolis,* 131 Ill. 552, and *Harris* v. *The People;* 130 id. 457.

This was an action on the case, brought by John Ensch, against John McNulta, receiver of the Wabash, St. Louis and Pacific Railway Company, in the Sangamon circuit court, to recover for personal injuries. The first count of the declaration charged the defendant was operating the railroad as receiver; that he was a common carrier; that he received the plaintiff as a passenger, to be carried from Springfield to Starne's Station, and that the platform there was constructed of unsuitable and defective material, and was in bad order and condition, etc. The second count charges that it was the duty of the defendant to stop such train at Starne's Station a sufficient length of time to enable plaintiff to get off the train in safety, and have the platform lighted, and that the defendant negligently failed to stop said train upon which the plaintiff was a passenger, etc., a sufficient length of time for that purpose, and negligently failed to cause a light to be placed upon the platform, by means whereof, the plaintiff being in the act of getting off the train after it had stopped, and in the night time, and while in the exercise of due care, etc., the train was suddenly started, and he was thrown between the platform of the station and one of the cars, and was caught by said car and carried beyond the platform, whereby he was injured, etc. The defendant pleaded the general issue only.

Upon the trial, plaintiff recovered judgment for $2500. The court overruled a motion for a new trial, and rendered judgment on the verdict, and for costs. The defendant sued out of the Appellate Court for the Third District a writ of error, and assigned upon the record, for error, the following: First, that the verdict of the jury was contrary to the evidence; second, that the verdict was contrary to the law and the instructions of the court; third, that the court gave improper instructions at the instance of the plaintiff, there being no evidence on which to base said instructions; fourth, that the court erred in overruling defendant's motion for a new trial, and in rendering judgment against the receiver, personally.

The Appellate Court affirmed the judgment of the circuit court, and the defendant brings the case to this court by writ of error, and assigns for error that the Appellate Court erred in not reversing the judgment, and in affirming the same.

The only evidence offered by the plaintiff related to the alleged failure of the defendant to stop the train at Starne's Station a sufficient length of time to enable the plaintiff to get off the same in safety. The evidence as to whether the plaintiff paid his fare, and that it was received by the conductor, and as to whether the train stopped at all at the platform at Starne's Station, was conflicting. There was, however, no dispute as to the fact that the train did stop after passing the platform some fifty or sixty yards. The plaintiff got on the train going east, at Springfield, January 14, 1888, a little after nine o'clock P. M. The train was a through fast train, was not scheduled to stop at Starne's Station, and no tickets were sold for that point to be used on the train. There was also a conflict in the evidence as to whether the station was called immediately before reaching it, by the persons in charge of the train.

Mr. George B. Burnett, for the plaintiff error.

Mr. C. A. Keyes, for the defendant in error.

Mr. Chief Justice Shope delivered the opinion of the Court:

The first point made by the plaintiff in error is, that the court erred in giving plaintiff's first instruction. The reason assigned is, there was no evidence upon which to base it. The instruction is as follows:

"The court instructs the jury, that if they believe, from the evidence, that the plaintiff was a passenger on the train of the defendant on the night of the 14th of January, in the year 1888, and that while the plaintiff was so a passenger, the said train stopped at the station which was the destination of plaintiff, but that said train did not stop at said station for a

reasonably sufficient length of time to allow the plaintiff to safely get off of said train at said station, and that said plaintiff was injured by reason of said train not stopping at said station for a reasonably sufficient length of time to allow said plaintiff to safely get off of said train, then, and in that case, a *prima facie* case of negligence is made out against the defendant, and the burden of explaining such *prima facie* case of negligence is thrown upon the defendant, provided the jury further believe, from the evidence, that the plaintiff, at the time he received the injury, (if the jury believe, from the evidence, that the plaintiff did receive injury,) was acting with due care and caution."

There was evidence that the train made two stops before it reached the crossing of the Illinois Central railroad: First, at or near the platform of Starne's Station, though but momentarily, and again started with a violent jerk; and then, some fifty or sixty yards farther, and east of the platform, where ample time was given to passengers to get off. It was shown by the evidence that this train, which is called the "lightning express," was not scheduled or required to stop at Starne's Station, but it was required by law to stop within eight hundred feet of the crossing of the Illinois Central railroad, which was shown to be five hundred and two feet east of the platform at Starne's Station. There was ample evidence, if the jury believed it, that this lightning express train, going east, sometimes stopped at the platform at Starne's Station, sometimes stopped before reaching it, and often east of the same, and that passengers were in the habit of getting on and off the train at the place where it stopped before reaching the intersection of the two roads. In this case there was evidence that the engineer whistled before reaching the platform at Starne's Station, and slacked the speed of the train until the coach in which the plaintiff was riding reached said platform, when the train came to a stop. It is true that there was a conflict in the evidence on this point. Those of the witnesses testifying to

the stoppage of the train at the platform say it was a very short one,— only a moment or a second,— when the train started again with a sudden, violent jerk, so strong as to almost throw down those standing on their feet in the cars. The plaintiff testified, that knowing the train would stop there for a very short time only, and that there were a good many passengers to get off there, he went to the rear end of the car next the smoking car, and sat down on the steps, so as to be able to get off before the rush of the other passengers came, and he, as well as others, testified that the train came to a full stop in front of the platform. He was to some extent corroborated also in this, from the fact that his jug, after the injury, was found sitting on the platform. He testified that he stepped one foot on the platform, and, before moving the other from the step of the car, the train started suddenly, and with such force as to throw him down, and that the next car struck him as he fell.

We agree with counsel for the plaintiff in error that this instruction must have referred to this first, momentary, stopping of the train, and not to its stopping east of the platform, as there was no evidence that the train did not then remain long enough to let all the passengers off. While it may be and is true that the train was not bound to stop at the platform to discharge its passengers bound for that station, it might stop at any place within eight hundred feet of the railroad intersection, as those in charge saw fit; and while it did not undertake to discharge passengers at the platform, it must be borne in mind that the plaintiff could not know what point those in charge of the train would select as the place for him to get off, except by their acts and conduct. As was said by the Appellate Court: "The conductor or brakeman announced the station in the usual manner, just before it was reached, and if, following that announcement, and in about the usual time afterwards, it actually stopped at the station platform, passengers would be justified in presuming it was for the purpose of discharging them there, and in proceeding to get off;

and if in the act of getting off while it was so stopped, and with due promptness and care, the plaintiff was thrown off and injured by the starting up of the train, that presumption would be conclusive upon the defendant. He could not avoid liability for such injury by stopping the train again a few rods further on, and then giving ample time for discharging the passengers. The jury must have found it did so stop," etc.

We think there was sufficient evidence upon which to predicate the instruction. So far as the rights of the plaintiff were concerned, the place where the train first stopped,—that is, the platform, (if it be found that it did stop at the platform, as has necessarily been done both by the trial and Appellate courts,)—must be regarded as the place where the defendant undertook to discharge him, there being no announcement to the contrary. Taking the evidence for the plaintiff as true, the acts and conduct of those in charge of the train justified the plaintiff in acting upon the assumption and belief that the train was there stopped to enable him to alight therefrom.

The defendant asked this instruction, among others:

"5. The court instructs the jury, that the only issue for their determination, under the evidence before you, is that presented by the second count of the plaintiff's declaration, which avers that the train did not stop a sufficient length of time to permit the plaintiff to get off in safety; and the court instructs you, that the legal effect of this averment is that said train did not stop a sufficient length of time at the point where the defendant undertook the discharge of the passengers for that place, and to entitle the plaintiff to recover, this averment must be proved as alleged; and if the jury believe, from the evidence, that said train did stop at the place where the defendant undertook to discharge the passengers at that place, a sufficient length of time to permit plaintiff to get off in safety, then plaintiff can not recover, and your verdict must be for the defendant, even though you may further believe, from the evidence, that before said train reached the place where the

defendant undertook to discharge said passengers, it made a momentary halt, and that plaintiff, in attempting to get off during said momentary halt, was thrown from the train and injured."

From what has preceded, it is apparent that this instruction contained an erroneous proposition. The second count of the declaration charges that it was the duty of the defendant to stop the train at Starne's Station long enough for the plaintiff to safely get off, and that he failed to do so, and that is the place where the plaintiff got off the train. He was not on the train when it stopped long enough for the passengers to get off. When the train stopped at the station, under the circumstances already stated, the plaintiff had the right to presume that the defendant proposed to discharge his passengers at that point, and to act upon that assumption, and the stop at the platform should have been long enough to allow the plaintiff to alight in safety. The evidence tended to show that the ordinary signal was given for the station, and also, as found by the Appellate Court, the station was announced in the cars, in the usual manner, by either the conductor or brakeman, and the defendant could not shield himself from liability to plaintiff, who started to get off immediately following such signal and announcement when the train came to a full stop at the platform, by showing that those in charge of the train intended to go further east before discharging the passengers, of which no notice was given. The stop at the platform, as to the plaintiff, under the peculiar facts of this case, might have been properly regarded by him as the stoppage of the train at the point where it was intended to let off the passengers. Having by the acts and conduct of his servants justified the plaintiff in attempting to get off the train, the duty of the defendant then attached to stop his train a sufficient length of time to enable the plaintiff to reach the platform in safety. His duty to the plaintiff, whom he had induced to believe that the train had reached the point at which he was to depart

therefrom, was in respect of the place where the train first halted, and not in respect of the place where it finally stopped.

It is complained by the plaintiff in error that the jury must have disregarded this instruction, and it follows from what we have said, that if they did disregard it, no legal wrong was done the defendant. Although no tickets were sold at Springfield for Starne's Station, to be used on this train, the plaintiff and some twenty others were received upon this train, to be carried to Starne's Station, and there was evidence tending to show that they paid and the conductor received their fare. On collecting fare to Starne's Station, it became the duty of the defendant's servants to notify the passengers so paying that the train would not stop at that station, or to carry them to such station and then give them sufficient time to get off in safety. It may be that if the passengers knew that the train did not stop at the platform of the station, but at some convenient point near by, and before reaching the Illinois Central crossing, and took passage with that understanding, there would be no obligation to stop at the platform. The proofs tend to show that for several years before the accident the lightning express train received passengers at Springfield to be carried to Starne's Station, and it was well understood that the conductor of the train was in the habit of collecting fares to that place.

The plaintiff in error also claims there was no evidence that he was operating the railroad at the time of the injury, or that the persons in charge of the train were his servants, or that he was a common carrier. Railway companies are by law common carriers of passengers and freight. (*Toledo, Wabash and Western Ry. Co.* v. *Roberts,* 71 Ill. 542; *Parmelee* v. *Mc-Nulty,* 19 id. 556.) The proofs show that the Wabash, St. Louis and Pacific railway was being operated in carrying passengers before and at the time of the plaintiff's injury. This objection was not made in the trial court. No plea was filed putting in issue the representative character in which the defendant was sued. In a suit against an administrator, unless

he denies the representative capacity in which he is sued, it will be admitted. (3 Chitty's Pl. 940, note k.) A judgment against the receiver creates no personal liability, and it is to be so entered as to be enforced only out of the funds of the corporation properly chargeable to him in the capacity of receiver. The fact, therefore, that the receiver made no objection to the suit against him in his representative capacity, before or at the trial, ought to preclude him from urging that he was not rightly sued. Plaintiff in error, in his brief, says: "The point is not that there is no evidence that defendant was receiver of the railway company, as the Appellate Court seems to suppose, but the point is, there was no proof that the defendant was operating the road at the time." If McNulta was the receiver of the road at the time of the injury, it must be presumed, in the absence of any plea or denial, that he was in discharge of the duty imposed upon him by that relation to the railroad. It will not be necessary for us to further discuss that question, for it was purely a question of fact. In no way has the plaintiff in error preserved the question in the record, so as to present it as a matter of law. The Appellate and trial courts having found the facts adversely to plaintiff in error, it is not open for our consideration.

It is lastly objected, that the judgment of the circuit court is erroneous, in that it is a personal judgment against McNulta. It is as follows:

"*John Ensch* v. *John McNulta, Receiver of the Wabash, St. Louis and Pacific Railway Company.*

"And now come the parties, by their respective attorneys, and the court, hearing the arguments of counsel upon the defendant's motion for a new trial, and being fully advised, overrules and denies the same. It is therefore ordered and adjudged by the court, that the plaintiff have and recover of and from the defendant the sum of $2500, the damages aforesaid, as well as its costs by him herein expended, and that execution issue therefor."

We are of opinion that the judgment is erroneous in the re-- spect urged. No judgment could be rendered against McNulta individually, and no award of execution could be made. It. must be entered against him as receiver, and be made payable out of the funds held by him in that capacity, in the due course- of the administration of his receivership. Beach on Receivers, 715, and authorities cited.

This error will necessitate the reversal of the judgment of the circuit court, but as no error had intervened up to and including the overruling of the defendant's motion for a new trial, no occasion exists for awarding a *venire facias de novo*.. In *Alwood* v. *Mansfield*, 33 Ill. 452, the court found that the verdict of the jury was sustained by the evidence, but that an. improper order had been entered thereon by the circuit court,. and the proper entry of judgment was made in this court. (See, also, *Pearsons* v. *Hamilton*, 1 Scam. 415.) In the subse- quent case of *Storing* v. *Onley*, 44 Ill. 123, the better practice- is said to be, to reverse the judgment and remand the cause,. with instructions to the circuit court to enter the proper order. Without reference to other adjudications, the practice has been, in cases where the verdict of the jury was correct, and no error- has intervened for which it should be set aside and a new trial awarded, to reverse the judgment improperly rendered upon the verdict, and to enter the correct judgment in this court, or to remand the cause, with instructions to the trial court to enter the proper judgment. We find in this record no other- error than that indicated, and we regard it the better practice to remand the cause, with instructions.

For the error in the entry of the judgment, the judgments of the Appellate and circuit courts are reversed, and the cause- is remanded to the circuit court, with instructions to enter- judgment upon the verdict of the jury in conformity with the: foregoing ruling, together with the costs of that court.

*Judgment reversed.*