THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

JULIA F. ARNOL.

*Filed at Springfield, January* 18, 1893.

1. RAILROAD COMPANY — *duty to stop its trains for passengers to alight.* It is the duty of a railway company carrying passengers on a freight train, in reaching the station of the passenger's destination, to bring the train to a full stop, with due and proper care and caution with

reference to the personal safety of the passengers; and, thereupon, not to start or move forward such train in an improper and dangerous manner at a time when such passengers may rightfully, in the exercise of due care, arise from their seats and prepare to leave the train at such station.

2. The implied contract of a railway carrier of passengers to carry them safely to their destination, includes the duty of furnishing a reasonable opportunity to alight from the train in safety at the end of the journey.

3. SAME — *conduct of its servants — ordinary care of passenger.* If the conduct of those operating a freight train, to which was attached a caboose, and their management of the train, amounted to an invitation for passengers to alight at a station for the discharge of passengers, and would be so understood and acted upon by reasonable and prudent persons, and a passenger acting in good faith upon such invitation, arises, upon the train coming to a standstill, for that purpose and is injured by a sudden start of the train, the jury will be justified in finding that he was in the exercise of ordinary care for his safety at the time of the injury.

4. If, by reason of such apparent invitation, the passenger was placed in peril from the further movement of the train, the duty of the railway company will at once arise to stop its train a sufficient length of time to permit him to leave it in safety, or to warn him of the danger in time to avert injury. In such case it will not be material whether the shock to the train producing the injury was an incident of the ordinary operation of the train, or was extraordinarily and unnecessarily violent.

5. SAME — *measure of duty of carrier.* The duty of the carrier is to be measured by the peril to the passenger whom it has accepted and undertaken to safely carry, and who has been induced by the conduct of its servants to assume a position of danger. Such duty relates to the place where the passenger has been induced by the conduct of its servants and the stopping of the train to believe he was to alight, and not to the final stopping of the train after the injury, a few feet further on at the same platform.

6. SAME — *due care of passenger — a question of fact.* Whether a passenger on a freight train was justified in assuming that it was the intention of those in charge of the train to discharge passengers at the first stop of the train at the station of his destination, and in attempting to get off, is a question of fact for the jury, in a suit by the passenger to recover for a personal injury caused by starting the train with a sudden jerk without warning.

7. SAME — *carrying passengers on freight trains — rights and hazards of the passenger.* A passenger taking passage upon a freight train or in a caboose or car attached to such a train, can not expect or require the

conveniences, or all the safeguards against danger that he may demand upon trains devoted to passenger service. He will be held to have accepted the accommodations provided by the company, subject to all the ordinary inconveniences, delays and hazards incident to such trains when made up and equipped in the ordinary manner of making up and equipping such trains and managed with proper care and skill.

8. The passenger has the right to presume that the train is thus made up and equipped, and that the cars, machinery and appliances are not, of their kind, so materially defective as to increase the ordinary hazards of transportation by such a train.

9. If a railway company consents to carry passengers for hire, by freight trains, the general rule of its responsibility for their safe carriage is not otherwise relaxed. It is only the hazards incident to such trains which the passenger assumes in taking a freight train, and not hazards or peril arising from the negligence or want of proper care of those in charge of it.

10. In the operation of freight trains, the primary object is the carriage of freight, and the appliances used are, and are known by passengers to be, adapted to that business, and the carrier is not, when transporting passengers thereon, held to a degree of care in its operation, that would destroy the use of the train for its primary purpose. But the law requires that the highest degree of care be exercised that is practicable and consistent with the efficient use of the means and appliances adopted; and the carrier is held to the same strict accountability for negligence of its servants, injuriously affecting the passengers, as it would be if the transportation had been by a train devoted to passenger service exclusively.

11. CARRIERS OF PASSENGERS — *degree of care required.* Ordinarily carriers of passengers for hire, while not insurers of absolutely safe carriage, are held to the exercise of the highest degree of care, skill and diligence practically consistent with the efficient use and operation of the mode of transportation adopted. This rule applies in the absence of a valid contract limiting the liability of the carrier whenever the relation of passenger and carrier is established.

12. While it is said that the utmost care and the highest degree of diligence is to be exercised, it is to be understood that the care and diligence exacted is not such as will exclude all possible peril, or required to be of that degree that will render the use of the instrumentalities of transportation known to be employed, impracticable; but it always has relation to the mode of conveyance accepted, and the conditions and circumstances necessarily attendant.

APPEAL from the Appellate Court for the Third District; — heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

This was an action by appellee to recover for personal injury alleged to have been occasioned by the negligence of the servants of the appellant company. A trial resulted in a verdict for plaintiff of $2500, upon which judgment was rendered, and which was, on appeal, affirmed in the Appellate Court. By its fourteenth instruction, appellant asked that the jury be instructed to return a verdict for defendant, which was refused. This ruling is, among other things, assigned for error, and will necessitate an examination of the record to see whether there was evidence tending to sustain plaintiff's right of recovery.

Appellant at the time of the alleged injury, and for some months, at least, prior thereto, had run on its road daily, from Bloomington south, what was called " an accommodation train," consisting of a " caboose" attached to its regular freight train, which left Bloomington between 5 and 6 o'clock, P. M. The record shows this train accommodated very considerable local travel, and on the evening in question the caboose was well filled. The train consisted of twenty-six freight cars and the caboose, and the train crew, of an engineer, fireman, conductor and two brakemen.

Appellee took the train at Bloomington for Shirley, which was reached before nightfall. In approaching Shirley, from the north, there is a gradual ascent until about the south end of the station platform, and then a descent somewhat more rapid, for a considerable distance.

Upon approaching Shirley, a north-bound freight train was found standing upon the main track, and the south-bound train, on which appellee was a passenger, was required to take the siding. Upon nearing the switch, the engineer ceased working steam and slowed up, to permit the brakeman on the forward end of the train to run ahead and open the switch, which was done, and the train passed through upon the siding at a rate of speed, as the engineer testifies, not faster than a man could walk. The rear brakeman stepped from the caboose,

where he seems to have been stationed, closed the switch after the train, and regained the caboose.

The evidence tends to show the caboose stopped twice, the first time at the north end of the platform or still farther north, and then was jerked forward and came to the final stop at the south end of the platform. Just where it stopped the first time, or how far the caboose ran, between that stop and the final one, is in controversy. Appellee and other witnesses place the first stop at the north end of the platform, and the distance run between the stops about thirty feet. Other witnesses place it much farther north, and the distance run much greater, some placing it as far as two hundred and fifty feet. The first stop is variously described, as momentary; for an instant; and as continuing for ten or fifteen seconds, and it is clear that no opportunity was then given for passengers to leave the train.

Appellee testifies, that upon the approach of the train to the station, the brakeman called out, "Shirley," "Shirley," in the usual manner of announcing the approach to the station. If the evidence of appellee and some other of the witnesses was credited, the jury were justified in finding that the caboose stopped at the north end of the station platform, after the usual station signal and call had been given by the brakeman.

Appellee testifies, in effect, that having heard the station announced in the usual manner, and observing the slowing up of the train and its coming to a standstill at the station platform, she arose from her seat with the intention of leaving the train, when instantly, and without warning, the caboose was jerked so violently forward that she was thrown down to the floor of the car and seriously injured. Her head was thrown toward the rear of the caboose, and the passengers who went immediately to her assistance were thrown into confusion by the jar when the train came to the final stop. She was found to be insensible, and in that condition taken from the car. The engineer, thinking the siding south of the station too short to ac-

commodate his train, and let the caboose up to the platform, applied the air brakes with which the first seven cars of the train were equipped, thereby permitting the forward brakeman to run ahead of the engine and open the south switch, to let the engine out on the main track. The switch being open, the engine pulled out on the main track, and again came to a full stop. The nineteen freight cars, back of the seven equipped with the air brakes, were permitted to run free, no brake having been applied to any of them.

Messrs. WILLIAMS & CAPEN, and Mr. WILLIAM BROWN, for the appellant :

An omission of a duty amounts in law to an act of negligence. Shearman & Redfield on Neg. (3d ed.) sec. 280.

There must be evidence upon which reasonable men could reasonably and properly find the fact of negligence. Id. sec. 11.

The burden of proof is on the party affirming negligence. Id. secs. 12 and 280.

If the evidence would justify an inference consistent with the absence of negligence on the part of defendant, just as well as it would an inference of negligence, the plaintiff can not recover. *Smith* v. *First Nat. Bank*, 99 Mass. 605 ; *Cotton* v. *Wood*, 8 C. B. (N. S.) 568 ; *Toomey* v. *Brighton R. R.*, id. 146 ; Shearman & Redfield on Neg. note 2, sec. 12.

" It is not enough for one to prove that he has suffered loss by some event which happened on defendant's premises or even by the act or omission of the defendant. He must prove that the defendant in such act or omission violated a duty resting upon him." *Curran* v. *Warren Chemical Works*, 36 N. Y. 153 ; *Welfare* v. *Brighton, etc., R. R.*, L. R., 4 Q. B. Cases, 693 ; *Terre Haute* v. *Augustus R. R., etc.*, 21 Ill. 186 ; *Tourtelotte* v. *Rosebrooke*, 11 Met. 460.

" The presumption is that the defendant has complied with all the obligations which rest equally upon every man, and if he has not, the plaintiff must prove it. He must for this pur-

pose prove facts from which it can be ascertained with reasonable certainty what particular precaution the defendant ought to have taken but did not take." *Daniel* v. *Metropolitan R. R.*, L. R., 3 C. P. 216, 491.

In all actions for negligence the burden is upon the plaintiff to allege and prove such negligent acts for the defendant as will entitle the plaintiff to recover. *C., B. & Q. R. R. Co.* v. *Harwood*, 90 Ill. 425 ; *C., B. & Q. R. R. Co.* v. *Gregory*, 58 id. 272 ; *Blanchard* v. *L. S. & M. S. R. R. Co.*, 126 id. 416 ; Patterson's Railway Law, sec. 373, and cases cited in note.

The injury to appellee resulted from one of the perils necessarily incident to travel on a freight train. *Frink* v. *Potter*, 17 Ill. 406.

The court erred in giving appellee's instructions, Nos. 2 and 3, and in refusing to give appellant's instructions, Nos. 6 to 14, inclusive. *C., B. & Q. R. R. Co.* v. *Hazzard*, 26 Ill. 373 ; *I. C. R. R. Co.* v. *Nelson*, 59 id. 110.

Messrs. BENJAMIN & MORRISSEY, and Mr. W. B. CARLOCK, for the appellee :

It is the duty of railroad companies engaged in the transportation of passengers, whether by freight or passenger trains, to do all that human care, vigilance and foresight can, under the circumstances, and in view of the mode of conveyance adopted, reasonably to guard against and prevent accidents and consequent injury to passengers. They are held to strict care and vigilance in operating their respective modes of conveyances, and are liable for the consequences of slight neglect or want of care. Life and limb are as valuable, and there is the same right to safety in the caboose as in the palace car. *Frink et al.* v. *Potter*, 17 Ill. 406, 410 ; *O. & M. R. R. Co.* v. *Muhling*, 30 id. 92 ; *R. R. Co.* v. *Horst*, 93 U. S. 291, 296 ; *R. R. Co.* v. *Doane*, 115 Ind. 435 ; *Dunn* v. *Grand Trunk Ry.*, 58 Me. 196.

Where it is shown that a caboose or car for passengers was under the exclusive control of the carrier or its servants, and

that an accident to a passenger was such as, under the ordinary course of things, would not have occurred had those who had the management of the car used proper care, it affords reasonable evidence that the accident arose from want of care. *Edgerton* v. *R. R. Co.*, 39 N. Y. 227; *Stokes* v. *Saltonstall*, 13 Peters, 181; *R. R. Co.* v. *Pollard*, 22 Wall. 341; *Dougherty* v. *Co.*, 81 Mo. 325; *R. R. Co.* v. *Reynolds*, 88 Ill. 418.

The verdict is sustained by the law and the evidence. *Nance* v. *R. R. Co.*, 94 N. C. 619; *McNulta* v. *Ensch*, 31 Ill. App. 100; *S. C.*, 134 Ill. 46.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

In this country it is the almost universal practice to announce the station which the train is approaching before it is reached, and while the train is still in motion. And it is universally understood that such announcement is intended as notice to passengers, without warning to the contrary, that the next stop of the train will be at the station announced. The purpose is understood to be, to enable the passengers intending to alight at that station, to be ready to leave the cars promptly, without undue haste or inconvenience to themselves or unnecessary delay of the train. It is not to be expected that there will be the same particularity in drawing up to a station by a freight train, as by a train devoted to passenger service. The great length and weight of such trains and the appliances necessary in their operation render them less easy of control. And so the public, presumably, understand, and conduct themselves accordingly. In this connection, the errors assigned to the ruling of the court in refusing the tenth, eleventh, twelfth and thirteenth instructions asked by appellant may be considered.

These instructions severally told the jury that no recovery could be had under the first, second, third and fourth counts of the declaration.

The first, second and third counts allege that it was the duty of the defendant to safely carry plaintiff from Bloomington to

Shirley, and there slacken the speed of its train with due care, and stop the same a reasonable time to enable plaintiff to alight, etc., and that the defendant did not use care and diligence in slackening the speed of its train, or stop its train at Shirley, etc., while the plaintiff was alighting therefrom, with due care, etc., caused the same to be suddenly and violently started forward, etc., whereby she was thrown down, etc., and injured.

The fourth count varies the same charge, and alleges, that: " While the plaintiff with the consent and permission of defendants, with due care, etc., was arising from her seat to alight," etc., the defendant caused the train to be suddenly started, etc., whereby, etc.

The implied contract to carry safely necessarily includes the furnishing of reasonable opportunity to alight from the train safely at the end of the journey. *R. R. Co.* v. *Aspell*, 23 Pa. St. 147; *Imhoff* v. *Chicago, etc., R. R. Co.*, 20 Wis. 36; *Jeffersonville R. R. Co.* v. *Hendricks' Admrs.*, 26 Ind. 228; *Burrows* v. *Erie Ry Co.*, 63 N. Y. 556; *Dougherty* v. *Chicago, etc., Ry. Co.*, 86 Ill. 467; *W., St. L. & P. Ry. Co.* v. *Rector*, 104 id. 296.

Whether appellee was, under the circumstances shown, justified in assuming that it was the intention of those in charge of the train to discharge passengers for Shirley, at the time and place of the first stop of the caboose in which she was riding, was a question of fact for the jury. If the conduct of appellant's servants and their management of the train amounted to an invitation to then alight, and would be so understood and acted upon by reasonable and prudent persons, and appellee, acting in good faith upon such invitation, arose, upon the train coming to a standstill, for that purpose, the jury would be justified in finding that she was in the exercise of ordinary care for her own safety. If she, by reason of such apparent invitation, was placed in peril from the farther movement of the train, the duty at once arose, on the part of appellant, to stop its train a sufficient length of time to permit her

to leave it in safety, or to warn her of the danger in time to avert injury. And it could not, in such case, be material, whether the shock to the train producing the injury was an incident of the ordinary operation of the train, or was extraordinary and unnecessarily violent. The duty of the carrier was to be measured by the peril to the passenger whom it had accepted and undertaken to safely carry, and who had been induced by the conduct of its servants to assume a position of danger. In *McNulta, Receiver, etc.,* v. *Ensch,* 134 Ill. 46, speaking of the duty of the receiver, who was operating the railroad, we said: "Having, by the acts and conduct of his servants, justified the plaintiff in attempting to get off the train, the duty of defendant attached to stop his train at the station a sufficient length of time to enable the plaintiff to reach the platform in safety," and *held,* that the duty related to the place where the plaintiff had been induced, by the conduct of the servants and the stopping of the train, to believe he was to alight, and not to the final stopping of the train after the injury, a few feet further on, at the same platform. See, also, *Tabor* v. *Del., etc., R. R. Co.,* 71 N. Y. 489 ; *Cent. Ry. Co.* v. *Van Horn,* 38 N. J. L. 133 ; *Columbus, etc., Ry. Co.* v. *Farrell,* 31 Ind. 408 ; *Bridges* v. *North London Ry. Co.,* L. R., 7 H. L. 213 ; *Nance* v. *R. R. Co.,* 94 N. C. 619 ; *Praeger* v. *Bristol, etc., Ry. Co.,* 24 L. T. (N. S.) 105.

But it is insisted that the rule announced in these cases has no application here, for the reason that appellee, having voluntarily taken passage upon a freight train, assumed all risk incident to the operation of such train, in the usual and ordinary manner in which such trains are managed and operated. Persons taking passage upon freight trains, or in a caboose or car attached to a freight train, can not expect or require the conveniences or all of the safeguards against danger that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodation provided by the company, subject to all of the ordinary inconveniences,

delays and hazards incident to such trains, when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill. The passenger has a right to presume that the train is thus made up and equipped, and that the cars, machinery and appliances are not, of their kind, so materially defective as to increase the ordinary hazards of transportation by such trains. He may take the train or not, at his option, and if he voluntarily selects such a train he should be and is held to have accepted it in discharge of the liability of the carrier to provide a safer and better mode of conveyance, and to have assumed the risk and inconvenience incident to its proper management and operation.

But if a railway company consents to carry passengers for hire by such trains, the general rule of its responsibility for their safe carriage is not otherwise relaxed. From the composition of such a train and the appliances necessarily used in its efficient operation, there can not, in the nature of things, be the same immunity from peril in traveling by freight train, as there is by passenger trains, but the same degree of care can be exercised in the operation of each. The result in respect of the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train and not to the other, and it is this hazard the passenger assumes in taking a freight train, and not hazard or peril arising from the negligence or want of proper care of those in charge of it. Ordinarily, carriers of passengers for hire, while not insurers of absolutely safe carriage, are held to the exercise of the highest degree of care, skill and diligence, practically consistent with the efficient use and operation of the mode of transportation adopted. *Tuller et al.* v. *Talbott,* 23 Ill. 357 ; *C., B. & Q. R. R. Co.* v. *Hazzard,* 26 id. 373 ; *C. & A. R. R. Co.* v. *Pillsbury,* 123 id. 9, and case cited. And this rule applies, in the absence of a valid contract limiting the liability of the carrier, whenever the relation of passenger and

carrier is established. While it is said that the " utmost care " and the "highest degree of diligence " is to be exercised, it is to be understood that the care and diligence exacted is not such as will exclude all possible peril, or required to be of that degree that will render the use of the instrumentalities of transportation, known to be employed, impracticable ; but it always has relation to the mode of conveyance accepted and used, and the conditions and circumstances necessarily attendant. In the operation of freight trains, the primary object is the carriage of freight, and the appliances used are, and are known by the passengers to be, adapted to that business, and the carrier is not, when transporting passengers thereon, held to a degree of care in its operation that would destroy the use of the train for its primary purpose. But the law does require that the highest degree of care be exercised that is practicable and consistent with the efficient use of the means and appliances adopted. And the carrier must accordingly be held to the same strict accountability for negligence of its servants injuriously affecting the passengers, as it would be, if the transportation had been by a train devoted to passenger service exclusively.

We need not extend this opinion by further discussion of the reasons for the rule; it is based upon a wise public policy, as well as upon the plainest principles of reason and justice and is sustained by authority. *R. R. Co.* v. *Muhling*, 30 Ill. 9 ; *C., B. & Q. R. R. Co.* v. *Hazzard*, 26 id. 381 ; *S. C.*, 1 Biss. 513 ; *I. & St. L. R. R. Co.* v. *Horst*, 93 U. S. 291 ; *Ohio, etc., Ry. Co.* v. *Dickerson*, 39 Ind. 317 ; *R. R. Co.* v. *Doane*, 115 id. 435 ; *P. & C. Ry. Co.* v. *Thompson*, 56 Ill. 138 ; *Edgerton* v. *N. Y. & H. R. R. Co.*, 35 Barb. 389; *S. C.*, 39 N. Y. 227; *DeLaye* v. *N. Y. Cent. Ry. Co.*, 56 Barb. 227 ; *Dunn* v. *G. T. Ry. Co.*, 58 Me. 187.

If, therefore, appellee was, in consequence of conduct of appellant's servants and their management of the train, placed in danger of injury from its farther movement, and the train was jerked forward without notice or warning of the danger, and

she was thereby injured, appellant would be liable. It is no answer to say that the train was operated in the ordinary and usual manner of running and operating freight trains. The duty of the carrier was to be measured by the peril of the passenger, whom it had accepted and undertaken to safely carry, and who had been needlessly put in danger by the acts of its servants, and its responsibility by the consequences that might result to her, from a failure to observe that duty. There being evidence tending to establish a neglect of the duty charged in the first, second, third and fourth counts of the declaration, the tenth, eleventh, twelfth, thirteenth and fourteenth instructions asked by appellant were properly refused.

It is objected that the court erred in giving appellee's second and third instructions. These instructions were based upon the theory that it was the duty of appellant to stop its train long enough at the first stop, shown by the evidence, to permit the plaintiff to alight in safety, and while, perhaps, not strictly accurate, they each state the law as applicable to the fact shown, with substantial correctness.

It was undoubtedly the duty of the railway company to bring its train to a full stop, " with due and proper care and caution, with reference to the personal safety of the passengers, and, thereupon, not to start or move forward such train in an improper and dangerous manner at a time when such passengers might rightfully, in the exercise of due care and caution, arise from their seats and prepare to leave the train at such station." In our view the proposition quoted contains a substantially accurate proposition of law, and no further discussion will be necessary.

Nor will it be necessary to discuss or determine whether there is evidence to sustain the allegations of negligence charged in other counts of the declaration, or whether permitting the nineteen freight cars to run free upon the down grade, without any attempt to control them, thereby communicating an

18—144 ILL.

accelerated jerking motion to the caboose, was negligence in the operation of the train.

We find no error in this record for which the judgment of the Appellate Court should be reversed, and it is accordingly affirmed.

*Judgment affirmed.*