## West Chicago Street R. R. Co. v. Louisa Manning.

1. NEGLIGENCE—*Starting Street Cars Suddenly as Passengers Are Getting Off.*—In a suit for personal injuries against a street car company, it was shown that at the time the plaintiff attempted to alight other passengers did get off, and that the conductor must, if he exercised reasonable diligence, have seen them so alighting. *Held*, that to suddenly start the car under such circumstances, and thereby cause an alighting passenger to be thrown, was evidence tending to show a negligent operation of the car, and a proper matter for the consideration of the jury.

2. STREET RAILROADS—*Duty in Discharging Passengers.*—An instruction defining the duties of employes of a street railroad company in stopping its cars to allow passengers to alight, given in the opinion, held proper.

3. SAME—*Proper Places to Alight—Presumption of Knowledge of Passengers as to.*—It is not the law that passengers on a street railroad are presumed to know that the proper places for passengers to alight are at the further crossings of street intersections.

4. SAME—*Care Required of Passengers.*— A passenger of a street railroad situated in a place of peril is not required to exercise the highest degree of vigilance for his own safety. The conduct required of a passenger under circumstances of danger is only that which an ordinarily prudent person would exercise under the same circumstances.

5. SAME—*Proof of Payment of Fare in Suits for Personal Injuries.*—In a suit by a passenger against a street railroad company, an allegation in the declaration that the plaintiff paid his fare is surplusage; and an instruction that unless the plaintiff proved, by a preponderance of the evidence, that he had paid his fare, as alleged in his declaration, the verdict should be for the defendant, does not state the law correctly.

6. WORDS AND PHRASES—"*At.*"—" At," when used in describing the place where an event occurred, means a relation of proximity to or nearness to, and a failure to prove the exact spot alleged does not constitute a variance.

7. INSTRUCTIONS—*Right to, Limited.*—Where counsel ask for a confusing and unreasonable number of instructions in a case that is controlled by a comparatively few well settled principles, a court of appeal may reasonably decline to critically examine refused instructions to determine if they do not contain an additional legal principle applicable to some phase of the case not covered by those given.

8. ERROR—*Without Injury, Not Ground for Reversal.*—A court of appeal will not reverse a judgment because a jury neglected to follow an erroneous instruction given at the instance of the party making the complaint, as no legal wrong was thereby done to such party.

⌐ **Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed May 24, 1897.

ALEXANDER SULLIVAN, attorney for appellant; E. J. McARDLE, of counsel.

HENRY D. BEAM and WILLIAM R. RUMMLER, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a suit to recover for personal injuries alleged to have been sustained by the appellee by being thrown to the ground when she was in the act of alighting from one of appellant's cars upon which she was a passenger, by the sudden and negligent starting of the cable train, composed, in part, of said car, after it had come to a stop at the corner of Washington street and Fifth avenue, in the city of Chicago.

The verdict was for $5,000, from which $1,500 was remitted and judgment was entered for the balance.

There is no point made in argument that the judgment is for too much, if, under the law and the evidence, any recovery can be sustained.

The facts are few and simple. The train had come eastward from the West Side of the city, through the Washington street tunnel, and the accident happened at or just before the beginning of the curve in the railroad from Washington street southward into Fifth avenue.

The contention of the appellee is that the train stopped in Washington street, at or near its intersection with Fifth avenue, and such intersection being the place where she and her companion wished to get off she, following her companion who stepped off in safety, rose from her seat while the train was at a stand-still and stepped down upon the footboard of the car in the act of stepping to the ground, when the train, without warning to her, was suddenly started up, causing her to fall to the ground, and occasioning the injuries alleged to have been suffered by her.

She does not claim to have given any signal or word of

West Chicago St. R. R. Co. v. Manning.

her wish to get off at that point, except such as was implied by her act of rising from her seat and stepping down in the manner stated.

On the other hand, the appellant contends that the train had not stopped, but had only slackened speed because of a team that was in the way ahead; that the regular stopping place was at the further end of the curve, and that for appellee to attempt to get off under the circumstances was such negligence on her part as to bar her from a right to recover.

A candid consideration of all the evidence as to whether the train stopped or only slackened up, justifies, in our opinion, the correctness of the jury's conclusion that it had come to a full stop before the appellee attempted to get off, and that it was suddenly started up again before she had reasonably sufficient time to safely alight.

Whether the near or the far side of a street crossing be the appropriate or the customary and lawful place for street cars to stop to take on and let off passengers is not a subject for consideration upon this record. It was proved, and not denied, that when the stop in question was made other passengers besides the appellee and her companion did get off, and there was evidence that tended to show the conductor must, if he exercised reasonable diligence, have seen them so alighting. To suddenly start up the train under such circumstances and thereby cause an alighting passenger to be thrown was, at the very least, evidence tending to show a negligent operation of the train, and was a proper matter for the consideration of a jury, and their finding under all the evidence in the case ought not to be disturbed. See C. C. Ry. Co. v. Mumford, 97 Ill. 560.

"Having by the acts and conduct of his servants justified the plaintiff in attempting to get off the train, the duty of the defendant then attached to stop his train a sufficient length of time to enable the plaintiff to reach the platform in safety," and such duty was in respect to the place where the train first halted, and not in respect of the place (further crossing) where it finally stopped. McNulta, Receiver, etc. v. Ensch, 134 Ill. 46.

It is contended that there was a variance between the declaration and the proof, because the declaration averred that the car was "stopped at the corner of Washington street and Fifth avenue," while the proof showed that it was stopped, if at all, west of the corner.

All of the testimony on both sides showed that the stopping or slackening up, whichever it was, occurred near to if not exactly at the line of intersection of such streets.

The wagon that caused the train to stop was "passing along Fifth avenue," and the appellee fell within the lines of Washington street, and at the moment she fell the grip-car, which was next in front of the car she was riding in, was upon the curve, and partly or wholly within the lines of Fifth avenue.

The allegation could scarcely have been more definite. "At," in the sense used in the declaration, means a relation of proximity to, nearness, near, about. Century Dictionary; Webster's Dictionary.

The proof sufficiently fits the allegation, and there was no variance.

Some other minor criticisms of the declaration, as compared with the evidence, are made, but they are unimportant.

At the instance of the appellee the court gave to the jury the following instruction, which is much complained of by the appellant:

"The court instructs the jury, as a matter of law, that it was the duty of the defendant, as a common carrier of persons of Chicago, when it stopped its cars, whether in consequence of a signal from some passenger on the car or not, not to start the same again while its passengers, or any of them, were in the act of getting off the car, if the fact that its passengers or any of them were in the act of alighting was known to the person having charge of said car, or would be known to such person by the exercise of due care and caution in the discharge of his duties; and as a common carrier of passengers the defendant should give its passengers a reasonable opportunity to alight from its cars

when standing still before starting the same—if the fact that its passengers or any of them desire to alight is known, or by the exercise of due care and diligence would be known, to the person in charge of the car.

And if the jury believe from the evidence in this case that on the twenty-second day of September, 1893, the plaintiff was a passenger upon one of the street cars of the defendant, operated by it on Washington street and Fifth avenue in said city of Chicago, and that while such car of the defendant, in which the plaintiff and others were being conveyed as passengers, was driven along Washington street, west of and toward Fifth avenue, it was stopped for the purpose of allowing its passengers, or some of them, among whom was the plaintiff, to get off; or had stopped for any other purpose, with or without a signal to stop, and when so stopped its passengers or some of them were in the act of getting off said car; and that the gripman or other person in charge of said car for the defendant knew, or by the exercise of due care and caution in the discharge of his duties would have known, that said passengers were in the act of getting off said car.

And if you further find from the evidence that the plaintiff, at this time and place, the said car being stopped and not in motion (if you find from the evidence that such was the fact), in the exercise of due care and diligence on her part was also in the act of alighting from said car, and that the defendant, by its gripman, started the said car while the plaintiff was so getting off, and before she had a reasonable time to do so, and thereby threw the plaintiff down upon the street, and by reason thereof the plaintiff was greatly injured in and about her hips, and was thereby otherwise greatly bruised and suffered severe bodily pain and injury, without negligence or fault on her part, and by reason of negligence or carelessness on the part of the defendant's servants in charge of said car (if you find from the evidence that such servants of the defendant were guilty of carelessness or negligence in starting said car), then the defendant would be liable for the damages, if any, thereby sustained by

the plaintiff, and the jury should find the issues herein for the plaintiff and assess her damages at such sum as the jury shall find from the evidence she has thereby sustained."

We have given attention to the several objections urged against such instruction, and deeming it unnecessary to lengthen the opinion by stating what they are, we are of opinion that the instruction is substantially correct, although unnecessarily verbose.

The appellant offered to the court and requested the giving of twenty-six instructions, of which eighteen were given in their original form, and one was given as modified. Of the seven that were refused, complaint is made concerning only two.

Where counsel thrust such a mass of law into a case that is controlled by a comparatively few well settled principles, we might reasonably decline to critically examine a refused instruction, to determine if it does not contain an additional legal principle applicable to some phase of the case not covered by the given instructions. Fisher v. Stevens, 16 Ill. 399; Leiter v. Kinnare, 68 Ill. App. 558.

But in this case the labor is easy. It is not the law that passengers on the road in question "are presumed to know that the proper places for passengers to alight are at the further crossings of street intersections," etc., as stated in one of the refused instructions.

Nor is it the law that a passenger situated in a place of peril "must exercise the highest degree of vigilance and care for her own safety," as stated in the other refused instruction. The conduct required of a passenger under circumstances of danger needs only to be that of an ordinarily prudent person. West Chicago St. R. R. Co. v. McNulty, 64 Ill. App. 549; same case, 166 Ill. 203.

It is also urged as a reason for reversing the judgment that the jury disregarded the instructions of the court, and particularly that they disregarded an instruction that unless appellee proved by a preponderance of the evidence that she had paid her fare, as alleged in her declaration, they should find appellant not guilty, there being no evi-

dence that she paid or that any one for her paid her fare. The allegation by the declaration of payment of fare was surplusage, and the instruction referred to did not state the law and ought not to have been given.     C., C., C. & St. L. Ry. Co. v. Best, 68 Ill. App. 532.

We will not reverse a judgment because a jury has neglected to follow an erroneous instruction given at the instance of the party making the complaint, who was not thereby legally wronged, NcNulta v. Ensch, 134 Ill. 46, where, as here, the relation of carrier and passenger was not disputed, and the obligation to pay fare will be implied from the relationship, if not presumed to have been made. 2 Redfield on Railways (6th Ed.), 95. Moreover, the jury did right.     Koerper v. Jung, 33 Ill. App. 144.

There being no material error in the record, the judgment will be affirmed.