## COTSWORTH P. OLDS *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Franklin.     September 20, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Railroad — Action.*

A person who, while a passenger on a train running upon a branch line of a railroad about ten miles in length, and consisting of freight cars and a combination car in which he is riding, one part of which is designed for passengers and another part for baggage, is injured by such jerking and jolting of the car as is ordinarily incident to a train of this kind, and who is familiar with the nature of the business on this line and the manner of conducting it, cannot maintain an action against the railroad corporation for his injury.

TORT, for personal injuries sustained by the plaintiff while a passenger on the defendant's railroad.   Trial in the Superior Court, without a jury, before *Richardson*, J., who, by agreement of the parties, reported the case for the determination of this court, in substance as follows.

The accident occurred on a branch line of the defendant's railroad, about ten miles in length, extending from South Deerfield to Turner's Falls in the town of Montague.

The plaintiff, who was about seventy years old and in good health for his age, on the day of the accident bought a ticket

entitling him to conveyance as a passenger from South Deerfield to Turner's Falls, and took one of the regular morning trains for the journey. This train was made up, in the manner usual on this branch line, of freight cars and a car known as a combination car, one part of which was fitted with seats for the conveyance of passengers and another part was adapted to carrying baggage.

The train stopped at the passenger station at Turner's Falls, and all passengers had an opportunity to get out. The station is situated about three fourths of a mile from the business centre, where the plaintiff was going for purposes of trade, and the defendant's track extends from the station into the business portion of Turner's Falls and a little beyond, to a locality where the defendant has an engine-house and turn-table. It had been the custom of the defendant to carry, without any additional charge, such passengers as chose to remain on its trains to a place known as the " Cutlery Steps," in the business part of Turner's Falls, and there to stop and give them an opportunity to leave the train.

The plaintiff, on the day of the accident, had the usual opportunity to leave the train at the regular passenger station, but he preferred, for convenience and to save walking the distance of three fourths of a mile to the business portion of the town and carrying a bundle which he had with him, to ride on the train to the Cutlery Steps, and he waited a few minutes while the car was at the passenger station until some shifting of the freight cars in the train had been done. The train, as it left the passenger station at Turner's Falls, was made up of the combination car and one freight car ahead of the engine and three freight cars behind the engine, and it proceeded in the same order, and at the time of the accident was unchanged in its arrangement.

The conductor was with the train until within about an eighth of a mile of the Cutlery Steps, when he stepped off without stopping the train and proceeded to attend to his work elsewhere. The engineer did not get word to stop the train at the Cutlery Steps, and did not know there was a passenger on board. As the train approached the Cutlery Steps, the brakeman on the combination car applied the brake on that car, as he expected the train would stop there, and the plaintiff arose from his seat,

and with his hand upon some part of the car near the door, waited for the train to stop; but it did not stop. The brakeman on the combination car then signalled the engineer to stop the train. The engineer applied the air brake on the engine, and " stopped the train as quick as the brake would hold," as he testified. The brakemen on the freight cars applied the brakes on those cars, and the train was stopped at a road crossing the track about four hundred and thirty feet from the Cutlery Steps. The trainmen testified that, at the time the signal to stop was given, the train was going at the rate of about three miles an hour; but the plaintiff testified that it was going faster; and in stopping, the link and pin coupling, which was used in the make up of the train, allowed the cars to come together in a jerking and jolting manner, which caused the plaintiff to be jerked backward and forward and thrown against some part of the car, and he received the injuries complained of.

The plaintiff had travelled over this branch line many times. He knew that the trains running on the branch were made up of a passenger car and freight cars; that at the time that he was riding from the passenger station to the Cutlery Steps the train consisted of a passenger car and freight cars; and that Turner's Falls was the end of the line. The conductor knew him, and that the business portion of Turner's Falls was his destination.

The judge found that the jerking and jolting were greater and more severe than would occur on an ordinary passenger train run under due care; and ruled that, if the liability in respect to preventing injury by jolting and jerking and stopping suddenly is the same, and if the obligations are the same in all these respects on a freight or mixed train, such as this train was, as on an ordinary passenger train, the plaintiff was entitled to recover; but if the defendant was not liable for such jolting and jerking as were ordinarily incident to a train of this kind, the plaintiff was not entitled to recover; and found for the defendant. If the ruling was correct, judgment was to be entered on the finding for the defendant; but if the defendant was under the same obligations to the plaintiff as it would have been if the train had been an ordinary passenger train run with due care, judgment was to be entered for the plaintiff in the sum of $350.

*P. D. Martin*, for the plaintiff.

*D. Malone*, for the defendant.

KNOWLTON, J. · The judge found that the jerking and jolting were "greater and more severe than would occur on an ordinary passenger train run under due care; and ruled that if the liability in respect to preventing injury by jolting and jerking and stopping suddenly is the same, and if the obligations are the same in all these respects on a freight or mixed train, such as this train was, as on an ordinary passenger train, the plaintiff is entitled to recover; . . . but if the defendant was not liable for such jolting and jerking as were ordinarily incident to a train of this kind, . . . the plaintiff was not entitled to recover." By agreement of the parties the case was reported to this court. If the ruling was correct, judgment is to be entered for the defendant; if incorrect, for the plaintiff. On the findings of fact, it must be assumed that this is the only disputed proposition of law which was considered at the trial.

The accident occurred on a branch line of the defendant's railroad about ten miles in length, extending from South Deerfield to Turner's Falls in the town of Montague. The trains running on this branch of the railroad are usually made up of freight cars and a car known as a combination car, one part of which is fitted with seats for the conveyance of passengers and another part is adapted to carrying baggage. It is reasonably to be inferred that there is not sufficient business over this part of the railroad to warrant the running of trains for carrying passengers only. If under these circumstances the defendant was legally bound to provide for the plaintiff at the place of the accident a train made up of passenger cars only, or to conduct its business in such a way as to start and stop its trains with no more jerking or jolting than is common in running ordinary passenger trains, the defendant is liable; otherwise it is not.

The nature of the defendant's business on this line, and the mode of conducting it, were well known to the plaintiff, and he must be assumed to have made his contract for carriage in reference to existing conditions. It is obvious that common carriers must adapt their vehicles and methods to the business to be done. There is every kind of business to be provided for in different places, from the carrying of thousands of tons of freight and

tens of thousands of passengers per day over a single line, to the maintenance of lines over which only an occasional passenger will pass and a few small articles of merchandise be carried. In some places long passenger trains with the best possible equipment for safety and comfort are reasonably required; in others a single horse and a cheap wagon are all that can be maintained from the income of the business for which provision is to be made, and all that reasonably can be expected. It is the duty of a carrier of passengers to exercise " the utmost care consistent with the nature of the carrier's undertaking, and with a due regard for all the other matters which ought to be considered in conducting the business." *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 218. If the business of a given line is the running of trains for freight with a car attached for passengers, the care required is such as ought to be exercised in running such trains. The law is clearly expressed in *Chicago & Alton Railroad* v. *Arnol,* 144 Ill. 261, 270, as follows: " Persons taking passage upon freight trains, or in a caboose or car attached to a freight train, cannot expect or require the conveniences or all of the safeguards against danger that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodation provided by the company, subject to all of the ordinary inconveniences, delays, and hazards incident to such trains, when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill. . . . But if a railway company consents to carry passengers for hire by such trains, the general rule of its responsibility for their safe carriage is not otherwise relaxed. From the composition of such a train and the appliances necessarily used in its efficient operation, there cannot, in the nature of things, be the same immunity from peril in travelling by freight train as there is by passenger trains, but the same degree of care can be exercised in the operation of each. The result in respect of the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train and not to the other, and it is this hazard the passenger assumes in taking a freight train, and not hazard or peril arising from the negligence or want of proper care of those in charge of it." Principles decisive of the present case are stated in

*Le Barron* v. *East Boston Ferry*, 11 Allen, 312, and in *Heyward* v. *Boston & Albany Railroad*, 169 Mass. 466. See also *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 218; *Illinois Central Railroad* v. *Axley*, 47 Ill. App. 307; *Dunn* v. *Grand Trunk Railway*, 58 Maine, 187, 197; *Lusby* v. *Atchison, Topeka, & Santa Fé Railway*, 41 Fed. Rep. 181, 184; *Ohio & Mississippi Railway* v. *Dickerson*, 59 Ind. 317.

The plaintiff in the present case well understood the kind of business in which the defendant was engaged, and the manner in which the business was conducted. So far as there were dangers naturally incident to the running of freight cars and a passenger car in the same train, the parties must be presumed to have contracted in reference to them, and the plaintiff to have assumed them.

We have no occasion to consider the additional fact that the plaintiff was injured on a part of the railroad which was designed exclusively for freight traffic, beyond the terminus of the line intended for passengers also. There are additional reasons for holding that, when the plaintiff went beyond the passenger station over a portion of the freight tracks, where he and other passengers were permitted to ride for their convenience as a favor, he assumed all the risks incident to the ordinary management of a freight train in that place.

*Judgment on the finding.*