FORD *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY.

Opinion delivered April 15, 1899.

RAILROAD—STOCK-KILLING—NEGLIGENCE.—In an action against a railroad company for killing a cow, it was proved that the engineer was keeping a careful lookout, and that the animal came on the track from behind a box car too close to the engine for him to check the train.    There was evidence that at the time of the killing the train was running through a populous town at a high and unusual rate of speed, and that it had approached within eighty rods of a street crossing without having given either of the statutory signals.    *Held,* that it was error to direct a verdict for the defendant.    (Page 366.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

### STATEMENT BY THE COURT.

The plaintiff, M. H. Ford, was the owner of a cow, which was struck and killed by an engine and train of the defendant company. The injury occurred within. the corporate limits of Marianna, a town of from 1,500 to 1,800 inhabitants. The cow was killed near the depot of the company, about 500 feet south of the public crossing on Tennessee street, and about 600 feet north of the crossing on Louisiana street. Trice's gin is on the side of the railroad just north of the crossing on Louisiana street, and south of the depot. One of the witnesses described the track through that portion of the town as follows: "The track is perfectly straight from Trice's gin north clear through the town. There is a curve just south of Louisiana street. There are a lot of houses and sheds and other obstructions along the east side of the track from Trice's gin up to within a short distance of the depot, and on the west side there is a long line of lumber piles near the track. From the depot north, nearly to the edge of the town, the fences and houses are built out near the railroad track, many of them within ten or fifteen feet of the track." On the question of the speed of the train at the the time the cow was struck, the engineer testified that at the time of the accident he was in charge of the pay train, and that it was running through the town at the rate of eighteen or twenty miles an hour. The train had no regular schedule time, but when it came into Marianna on that day had lost a little time, and he was trying to make it up. "We usually," he said, "run slow through towns. I don't believe I ever did run through town as fast as we run that train that day. We had only the engine, tender and two coaches, with air brakes. With that train and air brakes I could stop the train running at the rate of thirty miles an hour in about 150 feet, and at the rate of ten miles an hour in seventy-five or 100 feet, and at five miles an hour in about forty feet." He also said that he was keeping a lookout, and saw the cow when she came from behind a box car and upon the track, about thirty-four feet ahead of the engine, too close to avoid striking her.

The agent of the company testified that the train was run-

ning faster than he "ever saw a train go through town before."
It was, he said, "running so fast that it threw the cow up so
high I thought it would be thrown over on the depot platform,
and I ran back from it, and I knew that the train whizzed by
me faster than I ever saw a train run by that depot."

The man employed by defendant as porter at its depot
testified on this point as follows: "The train was running very
fast when it struck the cow and passed the depot. I can't say
how many miles an hour it was running, but it just went by
'whew!' and I could hardly see anything but dust. It was run-
ning faster, I think, than the regular speed of the passenger
trains on this road. I did not hear either the whistle or bell.
I heard her blow at the crossing below the gin, but not after
that."

Another witness said: "I heard the engine blow up at the
crossing beyond the gin, and I started across the track at the
Tennessee street crossing with my wagon, thinking I had plenty
of time to cross, and the train came so fast that it like to have
caught me. It was running very fast; faster than I ever saw a
train run before. Neither the bell was ringing nor the whistle
blowing. Neither were sounded after the blow at the crossing
south of the gin. I was right on the side of the track when it
passed, and could have heard it had it blown or whistled."

There was other evidence to the same effect that the usual
speed of passenger trains on that road was from twenty-eight
to thirty miles an hour, and that this train was running faster
than the ordinary speed of the passenger trains. After the ev-
idence was all in, the circuit judge directed a verdict for de-
fendant, and gave judgment accordingly.

*McCulloch & McCulloch*, for appellant.

The mere fact that, after the animal came into view from
the train, its killing could not be avoided does not overcome
the presumption of negligence; for it was shown that those in
charge of the train were negligent both in failing to sound
proper signals and in running at the rate of speed too high for
safety in a town; and the jury should have been left to say
whether either of these caused the injury. 53 Ark. 201; 63
Ark. 177; 60 Ark. 409; 64 *id*. 535; 6 Am. & Eng. Enc. Pl. &

Pr. 686. The court erred in directing a verdict for appellee. *id.* 684–6.

RIDDICK, J., (after stating the facts.) The only question in this case is, whether the evidence at the trial was legally sufficient to support a verdict in favor of the plaintiff. In order to test that question, we must accept as true that view of the facts the most favorable to plaintiff which the evidence warrants. It is admitted that the cow was killed by defendant's train, and this, under the statute, makes out a *prima facie* case against the defendant. To rebut this, the engineer testified that he was keeping a careful lookout, and that the cow came upon the track from behind a box car, and too close to the engine for him to check the train and avoid striking her. As this testimony was not contradicted, we take it to be true; but although he kept a proper lookout, he may have been guilty of negligence in other respects.

There was evidence tending to show that, as the train came into the town from the south, it gave the signal for Louisiana street crossing, and then, running at a high rate of speed, exceeding thirty miles an hour, passed through the town, and over Tennessee crossing, without giving any further signal of any kind, meantime in its passage through the town striking and killing two cows, one of them the property of the plaintiff.

Public convenience and necessity of course require that railroad trains should run at a high rate of speed, and the mere fact that a train was running fast at the time of striking an animal is no proof of negligence on the part of the company, when unconnected with other facts tending to show that it was negligence under the circumstances to run at such speed; for trains are expected to run fast. But when the accident happens in a city or populous town, the circumstances then may be such that the jury would be justified in finding the company guilty of negligence in running its train at a great and unusual rate of speed, and this is certainly true when the statutory signals are not sounded for the different street crossings. *St. Louis, I. M. & S. Ry. Co.* v. *Hendricks,* 53 Ark. 201; 3 Elliott, Railroads, § 1160.

We think therefore that the evidence in this case would support a finding that the company was negligent, and the next

question is, would it authorize a finding that such negligence was the cause of the injury? The evidence tended to show that, at the time of the accident, the train was approaching, and within eighty rods of, the crossing on Tennessee street, but gave no signal of its approach. This court said, in a similar case, that, under such circumstances, it was a question for the jury to say whether the failure to give the statutory signals contributed to the injury. *St. L., I. M. & S. Ry Co.* v. *Hendricks*, 53 Ark. 201.

In addition to this, if we assume that the jury were justified in finding, and would have found, that, under the circumstances, the company was guilty of negligence in running · its train at a high rate of speed, it would be for them to determine whether such speed was the proximate cause of the injury. The cow was close to the engine when first discovered,—too close for the engineer to avoid the collison with the train running at the rate of thirty miles an hour; but what would have been the effect of a lower rate of speed we are unable to say. Although the train could not have been stopped before reaching the point at which the cow came on the track, we are not able to say that a lower rate of speed would not have permitted the cow to cross the track before being struck by the train. This question was one peculiarly within the province of the jury to determine.

On the whole case, we are of the opinion that the circuit judge erred in directing a verdict. The judgment is therefore reversed, and a new trial ordered.