94    289
101   ² 55

D. P. ERWIN, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, April 29, 1902.**

1. **Common Carrier of Passengers:** CARE: FREIGHT TRAIN: PASSENGER TRAIN. The degree of care required to be exercised by a common carrier of passengers is not measured by the nature of the vehicle or the appliances (assuming them to be reasonable and safe) it selects for the purpose, but by the degree of care he exercises in the use of these vehicles while transporting his passengers, and the same degree of care is required in the operation of a freight train carrying passengers as in the operation of an exclusively passenger train.

2. ———: ———: ———: PASSENGER ON FREIGHT TRAIN, DUTY OF: PRESUMPTION. But a passenger who takes passage on a freight train must be presumed to do so with a knowledge of their inconveniences and that they are not equipped with all the safeguards provided for trains devoted to passenger service, and should be held to have accepted the accommodations usually furnished by such a train, and assumed the risk and hazards ordinarily incidental to their operation.

3. ———: ———: RES IPSA LOQUITUR, RULE OF. The rule of *res ipsa loquitur* can only be applied where there is something, which, if unexplained, tends to show that some negligence or omission of duty was the proximate cause of the injury.

4. **Statement in Affidavit:** PRESUMPTION: EVIDENCE. Where a party to an action makes an affidavit, the law presumes the statement in the affidavit to be true, because they are admissions made against interest.

Vol 94 app—19

5. **Contributory Negligence: EVIDENCE.** In the case at bar, the evidence shows that the plaintiff was guilty of such contributory negligence as to preclude a recovery for damages for his alleged injuries by the defendant.

Appeal from Howell Circuit Court.—*Hon. William N. Evans,* Judge.

REVERSED.

*L. F. Parker, J. T. Woodruff* and *W. J. Orr* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence interposed at the close of the testimony offered by the plaintiff, and again presented at the close of all the evidence. Wait v. Railway, 65 S. W. 1028; Guffey v. Railway, 53 Mo. App. 462; Reichenbach v. Ellerbe, 115 Mo. 588; Long v. Moon, 107 Mo. 334; Jackson v. Hardin, 83 Mo. 175; Powell v. Railroad, 76 Mo. 80. (2) Instruction numbered two, given on the part of respondent, is erroneous in that it demands of carriers of passengers a higher degree of care than that imposed by law. Wait v. Railroad, 65 S. W. 1028; Hite v. Railway, 130 Mo. 132; Sawyer v. Railroad, 37 Mo. 241; Smith v. Railroad, 108 Mo. 249; 2 Rover on Railroad, pp. 947, 948; 2 Shearman & Redfield on Neg., sec. 494; Gilbert v. Railway, 160 Mass. 403. (3) Instruction numbered four, given on the part of respondent, is erroneous in that it makes the sudden stopping of the freight train negligence *per se,* whether such stopping was usual and incident to the careful operation of such trains or not. Wait v. Railroad, 65 S. W. 1028; Guffey v. Railroad, 53 Mo. App. 469; 2 Fetter on Common Carriers of Passengers, sec. 473.

*Livingston & Burroughs* for respondent.

(1) The court committed no error in overruling appellant's demurrer to the testimony. If there is any evidence,

it must go to the jury, who are the exclusive judges of its weight and sufficiency, however slight it may be, and whether it be direct or inferential. Twohey v. Frain, 96 Mo. 104; Charles v. Patch, 87 Mo. 450; Lee v. Knapp & Co., 137 Mo. 385; Taylor v. Short, 38 Mo. App. 21; George v. Railway, 40 Mo. App. 433; Headley v. Orchard, 77 Mo. App. 141. (2) There is at least an implied contract, on the part of a railway company, to safely carry its passengers. Sweeney v. Cable Co., 150 Mo. 385; Dougherty v. Railway, 81 Mo. 325. (3) The fact of the injury, while being carried as a passenger on defendant's train, makes for plaintiff a prima facie case, and the burden of proof is then cast upon defendant of relieving itself from responsibility by showing that the injury was the result of an accident which the utmost care, forethought and diligence could not have prevented. Guffey v. Railway, 53 Mo. App. 462; Lemon v. Chanslor, 68 Mo. 340; Condy v. Railway, 85 Mo. 79; Furnish v. Railway, 102 Mo. 438. (4) Respondent's instructions being correct, any seeming or real conflict, invited and caused by instructions asked and given on part of appellant, can not avail it in this court. Christian v. Ins. Co., 143 Mo. 460; Baker v. Railway, 122 Mo. 533. (5) Each and every instruction for plaintiff is the law. Aside from the inconvenience of travel on a freight train, a passenger thereon is entitled to the same degree of care as if carried on a passenger train. Whitehead v. Railway, 99 Mo. 263; McGee v. Railway, 92 Mo. 208; Railway v. Horst, 93 U. S. 291; Wagner v. Railway, 97 Mo. 512.

BLAND, P. J.—The material averments of the petition are that plaintiff was a passenger on one of defendant's freight trains and, "That plaintiff, while lying on the seat in the caboose of said train, below Marked Tree, in the State of Arkansas, the defendant, its agents, servants and employees in charge thereof, so carelessly, negligently and unskillfully

managed said train that it was stopped very suddenly, throwing plaintiff with great force, his head striking an iron brace on the seat on which he was lying, thereby fracturing plaintiff's skull," and that he was severely and permanently injured.

The answer was, first, a general denial; second, that the stopping of the train was not unusual and that jolting was incident to the stopping of that kind of a train; and, third, that if plaintiff was injured it was the result of his failure to use ordinary care.

The facts are that J. R. Pinner, J. W. Stone and plaintiff were residents of the State of Tennessee and all men of families. Being desirous of removing to Howell county, Missouri, they all appeared at Memphis, Tennessee, on March 9, 1900, and jointly chartered a box freight car of the defendant, into which they loaded their household goods, chickens and dogs and four work animals to be hauled by defendant to Willow Springs, in Howell county, Missouri, a station on defendant's road. The freight contract entitled one of the shippers to transportation on the train hauling the car, for the purpose of looking after the live stock of the shippers. The plaintiff was selected for this purpose and at eight o'clock p. m. on the night of March took passage at Memphis on a through freight train made up of the chartered car and thirty-nine other freight cars, the engine and caboose. After proceeding west about thirty-six miles, the engineer in charge of the train, at about ten-thirty p. m. was signaled to stop. He slowed down his train until he reached the flagman, who boarded the engine while still in motion and informed the engineer that there was a slide in the track a short distance ahead. The engineer pulled up slowly until within a few car-lengths of the slide when the train was stopped and was held until the next morning and until the track was repaired by the section men so that the train could pass in safety.

Plaintiff testified that when the stop was made he was lying in the caboose on a seat running lengthwise of the car,

with his head towards the engine and near the iron frame-work at the end of the seat; that he did not know whether he was asleep or not; that when the stop was made his head struck the end of the iron frame of the seat and he was thrown to the floor and his head was turned in the direction that his feet were when he lay down; that the conductor was in the caboose and rushed out of the door when the stop was made uttering blasphemous epithets against the engineer for making so sudden a stop.

In respect to his injuries the plaintiff testified that when he got up from the floor of the caboose his head hurt him; that he felt of it and found a lump on the left side near the top of his head and that his neck and back hurt him; that he was a farmer and that he was unable to do scarcely any labor at all on the farm in the season of 1900 and suffered from pains in his head, back and neck and from nervousness; that he had improved some but was still unable to perform much labor and still suffered from pains in his head, back and neck; that he made no complaint to the trainmen about being hurt while in the car, said nothing to any one about it until he had arrived at his destination; that after the lump went away there was a depression in his skull; that in May, 1900, he went to the defendant's local surgeon at Willow Springs, who examined his head and wanted him to go to Kansas City to be examined and treated by defendant's chief surgeon, but he refused to do so because he had no one to leave with his family.

At the time this examination was made plaintiff made an affidavit in respect to the manner of his injury, the material parts' of which are as follows:

"I rode in the caboose. After we had gone some distance I lay down on the seat in the caboose to get some sleep. This seat had a cushion, but whether it was upholstered with leather or rough cloth, I do not remember. I think it was black. There was another passenger on the caboose besides

me.   He got on at Memphis and left the train at Jonesboro, Arkansas.   He was a middle-aged man, commonly dressed. I think he was a railroad man looking for a job, at least that is what he told me.   This man also lay down in the caboose on the opposite side from me.   When I laid down I laid with my head toward the engine.   The other passenger laid with his feet toward the engine.   This was the way we laid when I went to sleep.   I do not know how long I slept, but I was awakened by a jolt on the head. . This jolt was caused by my head coming into collision with the iron framework on the seat.   I think the sudden stopping of the train caused it.   I fell off of the seat onto the floor of the caboose.   I got up right away, my head hurting badly.   The other passenger was sitting on the seat where he had been lying down.   I do not know whether he was hurt any or not.   I sat down on the seat and held my head, which was still paining me.   Afterwards I lay down again.   I went to sleep again after a while. It was day when I woke up, and the train was standing still. My head was still hurting me.   I did not leave the train until we got to Willow Springs, about 11 o'clock at night, March 10, 1900.   My head was hurting me then and has been hurting me ever since.   I think it was more than a week before I went to see a doctor about it.   Maybe it was two weeks.   I first went to see Dr. Johnson, of Willow Springs.   He told me I had a depression in the head.   I next went to see Dr. H. J. Rowe, of Willow Springs.   He would not make an examination because he was the railroad doctor here.   I next went to Dr. Hollenbeck, but he refused because he was connected with the railroad company.   Mr. Wilkinson, my attorney was with me and heard Dr. Hollenbeck refuse.   I next went to Dr. Meacham.   He examined me.   He found a depression in my head.   He said I might have to have a piece of my skull removed.   I was afterwards examined by Dr. Hollenbeck and Dr. Rowe.   I think the railroad company requested that examination.   They also found a depression

in my head. The place is on the left side and on top of my head. They told me that the company might want me to go to Kansas City for treatment. I told them I did not want to go. The reason I refused was because I had nobody here to stay with my family. Since the injury the pain has been getting less, but the depression remains and it feels as if something is lying on my head. Previous to this I have never had an injury to my head. I never have noticed the depression before. One of the horses in the box car belonging to Mr. Pinner was knocked down and bruised and gashed by the same jolt that hurt me. The horse died a week afterward. Another horse and two mules were also scratched up a little. Some tin buckets and coffee pots among the household goods were mashed and jammed up. The other passenger on the train told me that the train had been flagged by a section foreman to keep the train from running into a washout of some kind, or bad piece of track. Mr. Pinner lives about three miles east of Willow Springs, and Mr. Jones about eight miles southwest of Willow Springs. I made no complaint of this injury to the conductor or anyone of the trainmen."

Dr. Meacham, a witness for plaintiff said that he had examined the plaintiff and found a slight depression on the side and near the top of his head which, in his opinion, had been caused by a blow; that it might have been caused by a fall and that he believed from plaintiff's appearance that he had at sometime in life received an injury on his head.

Plaintiff's Tennessee acquaintances testified that prior to his removal to Missouri he had been an able-bodied man; that in the summer of 1900 he was unable to do hardly any work at all on his farm and that while he had improved some he had not regained his former strength.

The engineer, conductor and brakeman in charge of the train all testified that the stopping of the train was not an unusual one or made with unusual violence; that the cars in the train were coupled together by drawheads and pins, and

that there was from three to five inches slack between each car and that when the engine stopped the cars naturally took up this slack and that by the time the caboose was reached, which was in the rear of the train, there would be five or six feet of slack to be taken up which would make a considerable jar and that this was unavoidable.

Two physicians, who had examined plaintiff's head, testified on behalf of the defendant that in their opinion the depression in plaintiff's skull, spoken of by him and claimed by him to have been made by an injury while he was on the car, was congenital; that a corresponding depression, not quite so deep, was found on the opposite side of the head.

Plaintiff testified that when he got up, another man who was in the caboose, and who had been lying on the seat on the opposite side of the car, was sitting up but that he made no complaint of having been injured.   One of the brakemen, who was on the top of a box car fifteen or twenty car-lengths from the engine when the stop was made, testified that he was not disturbed by the stop.   No one besides the plaintiff was thrown or injured on account of the stopping or was in the least disturbed thereby, so far as the evidence shows.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered instructions in the nature of demurrers to the evidence, which the court refused, and this ruling is assigned as error.

The degree of care required to be exercised by a common carrier of passengers is not measured by the nature of the vehicle or the appliances (assuming them to be reasonably safe) it selects for the purpose, but by the degree of care he exercise in the use of these vehicles while transporting his passengers, and the same degree of care is required in the operation of a freight train carrying passengers as in the operation of an exclusively passenger train. McGee v. The Missouri Pacific R'y Company, 92 Mo. 208; Wagner v. The Missouri Pacific R'y Co., 97 Mo. 512; Whitehead v. The St. Louis,

I. M. & S. R'y Co., 99 Mo. 263; Guffey v. The Hannibal & St. J. R'y Co., 53 Mo. App. 462; Wait v. Omaha, K. C. & E. R. Co., 65 S. W. 1028. But a passenger who takes passage on a freight train must be presumed to do so with a knowledge of their inconveniences and that they are not equipped with all the safeguards provided for trains devoted to passenger service and should be held to have accepted the accommodations usually provided by such a train and assumed the risk and hazards ordinarily incident to their operation. Chicago & Alton R'y Co. v. Julia F. Arnoal, 19 L. R. A. 313; Olds v. New York, etc., Railroad, 172 Mass. 73. When the fact that there is more or less jerking and jolting incident to the operation of a freight train—a matter of common knowledge (Guffey v. Railroad, supra)—is taken into view, negligence can not be inferred from the mere fact that the plaintiff was injured from a jar occasioned by the stopping of the train. Carvin v. St. Louis, 151 Mo. 334; Wait v. Railroad, supra. The rule of *res ipsa loquitur* can only be applied where there is something, which if unexplained, tends to show that some negligence or omission of duty was the proximate cause of the injury. Gallagher v. Edison Illuminating Company, 72 Mo. App. 576.

The plaintiff, by his own evidence, shows that he placed himself in a position in the car where it was probable that he would be bumped against the framework of the seat or thrown off the seat, or both, by the usual violent jolting, incident to the stopping and starting of a long and heavy freight train. In his affidavit plaintiff stated that he was asleep when he was injured. In his testimony he was not sure whether he was asleep or awake. His statement in his affidavit, the law presumes to be true because it was an admission against his interest. Feary v. Street R'y Co., 162 Mo. 105. If asleep, then he did not know and could not know whether his injury was occasioned by being bumped against the iron frame of the seat or by the fall on the floor of the caboose.

In Wait v. Railroad, supra, it was held by the Supreme Court of this State that the plaintiff, who had boarded a caboose as a passenger on a freight train and who, while in the act of taking off his overcoat standing in the aisle between the seats, had been so violently thrown by the stopping of the train onto the seats as to break them down and fracture some of the ribs and to loosen others from his spinal column, could not recover in the absence of any showing that the engineer stopped the train with unusual violence; and that the lower court correctly sustained a demurrer to plaintiff's evidence.

We think the Wait case a much stronger case than the one in hand, and for reasons stated in that case and stated in this opinion, we think the court erred in overruling defendant's demurrer to the evidence, wherefore the judgment is reversed. *Barclay* and *Goode, JJ.*, concur.