RODGERS *v.* CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY.

Opinion delivered October 7, 1905.

1. TRIAL—DIRECTING VERDICT—REVIEW.—In reviewing the action of the trial court in directing a verdict for defendant, the question before the appellate court is whether the evidence introduced by the plaintiff was legally sufficient to support a verdict in his favor; and in testing

that question the testimony must be given its strongest probative force in favor of plaintiff's cause of action.   (Page 522.)

2.  CARRIER—FREIGHT TRAIN.—A passenger riding on a freight train assumes the inconveniences and risks usually and reasonably incident to travel on such trains.   (Page 523.)

3.  SAME—DUTY TOWARD PASSENGER ON FREIGHT TRAIN.—While a passenger on a freight train assumes the increased risk incident to the operation and management of such trains, yet, subject to this qualification, the railway company becomes bound in favor of the passenger by all the obligations of a common carrier in the case of a passenger train.   (Page 523.)

4.  PERSONAL INJURY—PROXIMATE CAUSE.—The failure of the railroad company to provide closets in a freight caboose was not the proximate cause of an injury to a passenger who was thrown off the train while relieving his bowels from the car steps.   (Page 523.)

5.  CONTRIBUTORY NEGLIGENCE—DISCOVERED PERIL.—Notwithstanding a passenger was negligent in placing himself in a perilous position on a car step, the railroad company is liable if the conductor saw his danger, and neglected to warn him or to exercise due care to prevent the train from suddenly moving.   (Page 524.)

Appeal from Monroe Circuit Court; GEORGE M. CHAPLINE, Judge; reversed.

### STATEMENT BY THE COURT.

Appellant, J. D. Rodgers, sued the Choctaw, Oklahoma & Gulf Railroad Company to recover damages for injuries caused by negligent operation of its train while he was a passenger thereon.   A trial was had before a jury, appellant testified in his own behalf, and rested his case, whereupon the court instructed the jury to return a verdict in favor of the defendant, which was done.

*C. F. Greenlee*, for appellant.

Appellee was guilty of negligence, which was clearly proved. 37 Ark. 519; 102 U. S. 451; 38 N. E. 578; 33 N. E. 960; 55 N. W. 270; 85 Fed. 945; 57 Ark. 418; 31 L. R. A. 261; 33 L. R. A. 127.   It was error to direct a verdict for defendant.   71 Ark. 445; 63 Ark. 94; 71 Ark. 305; 70 Ark. 230.

*E. B. Pierce* and *T. S. Buzbee*, for appellee.

No negligence on the part of the appellee is shown.   52 Ark. 517; 69 Ark. 405; 75 Ark. 263; 68 S. W. 88; 11 S. E. 555. The appellant was guilty of contributory negligence.   4 Elliott, Railroads, 2552; 54 Ark. 29; 40 Ark. 298; 46 Ark. 537; 71 Ark. 590; 38 Ga. 409; 50 Ga. 353; 84 Me. 203; 21 Am. & Eng. R. Cas.

405; 18 *Ib.* 179, 194; 22 N. E. 662; 34 Am. & Eng. R. Cas. 553; 67 Ill. 398; 84 S. W. 175; 55 Ark. 252.

McCulloch, J., (after stating the facts.) The only question before us for determination is, whether the evidence introduced by the plaintiff was legally sufficient to support a verdict in his favor; and in testing that question we must give the testimony its strongest probative force, and accept that view of the facts which it will warrant most favorable to plaintiff's cause of action. *Catlett* v. *Railway Co.,* 57 Ark. 461; *Ford* v. *St. L., I. M. & S. Ry. Co.,* 66 Ark. 363; *Burns* v. *St. Louis S. W. Ry. Co., ante* p. 10.

Appellant lived at Brinkley, a station on defendant's railroad, but was engaged in business at a switch known as the G. & C. Siding, six and one-half miles west of Brinkley, on defendant's road. Passenger trains did not stop at this switch, and appellant was accustomed to ride out there two or three times a week on freight trains which stopped there. On the occasion in question he boarded a freight train at Brinkley to go the the switch, and also shipped a lot of merchandise to be put off there. *En route* he became sick, and his bowels wanted to move, the call being too urgent to await the arrival at his destination. The caboose was not provided with a closet, and he asked the conductor to slow the train down so that he could get off, attend to the call of nature, and walk the remainder of the distance to the switch. The conductor declined to do that. Shortly afterwards the train reached the switch, and was brought to a stop, but the caboose was stopped over a trestle 85 feet long and 20 feet above the surface of the ground.

Appellant testified that he did not know that the caboose was over the trestle, and walked out on the rear step, expecting to get off; that as he walked out on the step he met the conductor going into the caboose, and the latter said to him, "You are in a hurry?" to which appellant replied, "Yes, I am;" that a brakeman on the front platform of the caboose called to him, saying, "Just squat on the steps." Appellant describes the incident as follows: "This man I was speaking about (the brakeman) said, 'Just squat down there,' and I said, 'I can't get off on the dump, for they have stopped over a trestle,' and he said, 'Squat on the steps' and I loosed my pants, and had the rail by my left hand, and the train

gave a jerk, and I fell to the trestle, and from there to the ground, and that's all there is to it." He testified also to material injury resulting from the fall—his collar bone and one rib were broken, and his arm was severely hurt.

Appellant contends that the railroad company was guilty of negligence in failing to provide a closet for the use of passengers, and that he should recover damages on that account. Freight trains are not equipped for the carriage· of passengers, and public carriers are not required to equip them for that purpose. *Arkansas Midland Railway* v. *Canman,* 52 Ark. 517; *Krumm* v. *St. L. I. M. & So. Ry. Co.,* 71 Ark. 590; *Chicago & A. Ry.* v. *Arnol,* 144 Ill. 261.

"A passenger riding in a freight train or a mixed train must be deemed to assume all the inconveniences and risks usually and reasonably incident to transportation or travel on such trains, and is not entitled to insist upon having the same care and attention that he might justly demand upon a regular passenger train." 4 Elliott on Railroads, § 1629; Hutchinson on Carriers, p. 616. 1 Fetter on Carriers of Passengers, pp. 33, 34; *Olds* v. *New York, etc., Ry. Co.,* 172 Mass. 73. But where the railroad company undertakes the carriage of passengers on freight trains, it owes such passengers the same high degree of care to protect them from injury as if they were on a passenger train. Hutchinson on Carriers, p. 614; 1 Fetter on Carriers of Passengers, p. 585; *Erwin* v. *Railway Co.,* 94 Mo. App. 289; *C. & A. Ry. Co.* v. *Arnol, supra.* Judge THOMPSON states the rule thus: "We find the courts are agreed upon the proposition that where a railway carrier carries passengers upon its freight trains, it thereby assumes toward them the relation of a carrier to his passenger. And while in such a case it is a reasonable conclusion that the passenger assumes the increased risk incident to the operation and management of such trains, yet, subject to this qualification, the railway company becomes bound in favor of the passenger by all the obligations of a common carrier upon a regular passenger train." 3 Thompson on Negligence, § 2901. Moreover, if it be held that it was the duty of the company to provide closets, the omission to do so cannot be said to have been the proximate cause of the injury complained of by appellant.

We think, however, that there was evidence from which the jury might have found that the conductor knew of the perilous position of appellant and could have prevented the injury, either by warning him of the danger, or by holding the train at a standstill. If the conductor was aware of his peril, and could, by the exercise of ordinary care, have warned him, and failed to do so, or could, by the exercise of such care, have prevented the sudden movement of the train which threw appellant off, and failed to do so, the company is liable for the injury.

Appellant testified that the conductor saw him go down the steps, and said "You are in a hurry?" Whether the conductor meant that appellant was in a hurry to debark, or to relieve himself from the steps of the caboose, does not appear; but the testimony shows that the conductor went into the caboose, and the jury might have found that he knew appellant was in a position of danger on the steps with the caboose on a trestle 20 feet high. They might also have found that the conductor heard the brakeman direct appellant to "squat down on the steps," and knew that he was about to relieve his bowels in that position. If so, he should have warned appellant of the danger or exercised some care to prevent the train from suddenly moving. At least, the question of his knowledge of appellant's position and care exercised to protect him should have been submitted to the jury under proper instructions.

This court has repeatedly held that, notwithstanding the negligence of the injured person in putting himself in a perilous position, whether a passenger or a trespasser on the track, if the direct cause of the injury is the omission of employees of the railroad company, after becoming aware of his peril, to use a proper degree of care to protect him, the company is liable. *L. R. & Ft. Smith Ry. Co.* v. *Pankhurst,* 36 Ark. 371; *L. R. & Ft. Smith Ry. Co.* v. *Cavenesse,* 48 Ark. 106; *St. Louis & S. F. R. Co.* v. *Townsend,* 69 Ark. 380; *St. L., I. M. & Sou. Ry. Co.* v. *Evans,* 74 Ark. 407; *L. R. Traction & Electric R. Co.* v. *Kimbro,* 75 Ark. 211; *K. C. Sou. Ry. Co.* v. *McGinty, ante* p. 356.

The court erred in directing a verdict, and the judgment is reversed, and the cause remanded for a new trial.