THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COM-
PANY v. W. H. RALSTON.

No. 15,358.    (93 Pac. 592.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Passenger on a Freight-train—Erro-
neous Instruction.* In an action to recover damages for in-
juries sustained while riding as a passenger in a caboose at-
tached to a local freight-train an instruction that "it is the
duty of a railway company . . . transporting passengers
. . . on a freight-train to exercise the highest degree of
care and diligence to which such trains are susceptible, and a
failure to use such degree of care is negligence on the part of
the railway company," is erroneous, where no modification or
explanation thereof is elsewhere given.

2. —— *Duty of Carrier.* It is the duty of a railroad com-
pany, when it carries passengers in a caboose or other car at-
tached to a local freight-train, to use the highest possible de-
gree of care and diligence in the protection of the safety of
such passengers to which such train is susceptible, considering
its construction, equipment and use as a carrier of freight.

Error from Reno district court; PETER J. GALLE,
judge. Opinion filed January 11, 1908. Reversed.

*M. A. Low,* and *Paul E. Walker,* for plaintiff in error.

*F. F. Prigg,* and *C. M. Williams,* for defendant in
error.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the dis-
trict court of Reno county, July 21, 1905, by the de-
fendant in error against the plaintiff in error, to re-
cover damages for injuries sustained by him while a
passenger in a caboose attached to a local freight-
train. On January 27, 1906, the plaintiff obtained
judgment in the district court, and the defendant
brings the case here for review.

The defendant complains of the trial court for re-
fusing to give instructions to the jury which were re-

quested by it, and for giving others to which it objected. The instruction specially objected to reads:

"It is the duty of a railway company . . . . transporting passengers . . . on a freight-train to exercise the highest degree of care and diligence to which such trains are susceptible, and a failure to use such degree of care is negligence on the part of the railway company."

There is nothing in the entire charge of an explanatory nature by which the jury could properly interpret this instruction or correctly apply it to the facts being considered. This instruction is criticized as being misleading and erroneous for the reason that the language used therein might easily be understood by the jury as a direction from the court to measure the care and diligence of the railway company by a higher standard than the law requires. It is within the range of possibility to operate a local freight-train quite smoothly and gently, with little or no jolting or jarring; and in the exercise of the highest possible degree of care and diligence, as required by the court's instruction, it would be negligence on the part of the company not to operate its trains in that manner. To do so, however, would destroy the train's usefulness as a carrier of freight and make passenger traffic thereon undesirable because of its lack of speed.

It is not the purpose of the law to require a railroad company operating a local freight-train on which passengers are carried to manage the train in a way to destroy or materially injure the principal business for which such a train is designed. Carrying freight is the chief purpose of local freight-trains. They are constructed and equipped for that business only. In the conduct of such business it is necessary to start and stop often, to take in and set out cars, shift the train on side-tracks, couple and uncouple cars, and load and unload freight of all kinds, each of which takes time. These movements necessarily cause more or less jolting and jarring. All persons who ride as passen-

gers in a caboose know this, and expect the delays, discomforts and inconveniences which are unavoidable in the operation of such trains. In determining the degree of care and diligence required of railroad companies in the operation of trains of this character these conditions should be recognized. We understand the rule to be that when a railroad company carries passengers on its local freight-trains as a business it must use the highest possible degree of care and diligence of which such a train is susceptible, in view of its construction, equipment and use as a carrier of freight. To say that such a train shall be operated with the highest possible degree of care and diligence of which it is susceptible, without regard to the considerations named, places a duty upon the company operating such train which the law does not recognize.

The instruction given and here criticized was copied from the case of *Mo. Pac. Rly. Co. v. Holcomb*, 44 Kan. 332, 24 Pac. 467. The statement as a legal proposition is correct, but as used in that case the words "to which such trains are susceptible" (syllabus) were intended to include the conditions hereinbefore mentioned. The decision was made upon the authority of the case of *Indianapolis, etc. R. R. Co. v. Horst*, 93 U. S. 291, 23 L. Ed. 898, and a large part of the opinion in that case was copied, adopted and followed. A part of the opinion in the last-named case reads:

"The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from any possible peril, nor such as would drive the carrier from his business, . . . but it does emphatically require everything necessary to the security of the passenger . . . and reasonably consistent with the business of the carrier, and the means of conveyance employed." (Pages 296, 297.)

From this it will be seen that this court, in the Holcomb case, held, as it does now, that a railroad company, when carrying passengers on a local freight

train, is held to the highest possible degree of care and diligence in the protection of the safety of its passengers, but when determining whether that duty has been performed or not the nature of the train, its construction and equipment, its duties as a carrier of freight and other circumstances necessarily involved in its operation should be considered. We conceive this to be the rule supported by the authorities generally. (*Mo. Pac. Rly. Co. v. Holcomb,* 44 Kan. 332, 24 Pac. 467; *Indianapolis, etc. R. R. Co. v. Horst,* 93 U. S. 291, 23 L. Ed. 898.) In the case of *Portuchek v. Wabash Ry. Co.,* 101 Mo. App. 52, 74 S. W. 368, the supreme court of the state of Missouri said:

"A passenger on a freight-train takes it with all the incidentals usual in the operation of such a train and submits himself to the inconveniences and assumes the perils ordinarily attending such method of transportation, but by consenting to carry passengers on such trains the responsibility of the railroad for their safe transportation is not restricted or lessened, and the same degree of care is required in the management of a freight-train carrying passengers as in the operation of a train exclusively for passenger service. In the words of Justice Swayne, 'Life and limb are as valuable, and there is the same right to safety, in the caboose as in the palace-car.' *Indianapolis, etc. R. R. Co. v. Horst,* 93 U. S. 296, 23 L. Ed. 898. But in the language, approved in many of the decisions upon the subject, from the composition of freight-trains and the appliances necessary in their operation, there cannot in the nature of things be the same immunity from peril in traveling by freight-trains as there is by passenger-trains. The primary purpose of such trains is the transportation of freight, and the equipments therefore are adapted to such business, and such of the traveling public as elect to journey by freight-trains are charged with the knowledge of such fact. It is not to be expected that there will be the same exactness in drawing up to a station by a freight-train as by a train devoted to passenger service, and precisely the same degree of care exercised in the operation of both may produce different results respecting the safety of the passengers, from the dangers inseparably connected

with the conduct of one train and not with the other, and this the public presumably understands, and conducts itself accordingly, and such inherent hazards the passenger is held to assume in taking a freight-train." (Page 54.)

The case of *Erwin v. K. C., F. S. & M. Ry. Co.,* 94 Mo. App. 289, 68 S. W. 88, is to the same effect. In the case of *Olds v. New York, &c., Railroad,* 172 Mass. 73, 51 N. E. 450, it was said:

"It is the duty of a carrier of passengers to exercise 'the utmost care consistent with the nature of the carrier's undertaking, and with a due regard for all the other matters which ought to be considered in conducting the business.' . . . If the business of a given line is the running of trains for freight with a car attached for passengers, the care required is such as ought to be exercised in running such trains." (Page 77.)

In the case of *Chicago & Alton R. R. Co. v. Arnol,* 144 Ill. 261, 33 N. E. 204, 19 L. R. A. 315, it was said:

"But it is insisted that the rule announced in these cases has no application here, for the reason that appellee, having voluntarily taken passage upon a freight-train, assumed all risk incident to the operation of such train in the usual and ordinary manner in which such trains are managed and operated. Persons taking passage upon freight-trains, or in a caboose or car attached to a freight-train, cannot expect or require the conveniences or all of the safeguards against danger that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodation provided by the company, subject to all of the ordinary inconveniences, delays and hazards incident to such trains, when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill. The passenger has a right to presume that the train is thus made up and equipped, and that the cars, machinery and appliances are not, of their kind, so materially defective as to increase the ordinary hazards of transportation by such trains. He may take the train or not, at his option, and if he voluntarily selects such a train he should be and is held to have ac-

cepted it in discharge of the liability of the carrier to provide a safer and better mode of conveyance, and to have assumed the risk and inconvenience incident to its proper management and operation.

"But if a railway company consents to carry passengers for hire by such trains, the general rule of its responsibility for their safe carriage is not otherwise relaxed. From the composition of such a train and the appliances necessarily used in its efficient operation there cannot, in the nature of things, be the same immunity from peril in traveling by freight-train as there is by passenger-train, but the same degree of care can be exercised in the operation of each. The result in respect of the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train and not to the other, and it is this hazard the passenger assumes in taking a freight-train, and not hazard or peril arising from the negligence or want of proper care of those in charge of it. Ordinarily, carriers of passengers for hire, while not insurers of absolute safe carriage, are held to the exercise of the highest degree of care, skill and diligence practically consistent with the efficient use and operation of the mode of transportation adopted." (Page 270.)

In the case of *Dunn v. Grand Trunk Railway,* 58 Me. 187, 4 Am. Rep. 267, it was said:

"Undoubtedly a passenger taking a freight-train takes it with the increased risks and diminution of comfort incident thereto, and if it is managed with the care requisite for such trains it is all those who embark in it have a right to demand. . . . 'That a passenger takes all the risks incident to the mode of travel, and the character of the means of conveyance which he selects, the party furnishing the conveyance being only required to adapt the proper care, vigilance and skill to that particular means, for this, and this only, was the defendant responsible. The passengers can only expect such security as the mode of conveyance affords.' " (Page 197.)

See, also, *McGee v. The Missouri Pacific Railway Company,* 92 Mo. 208, 4 S. W. 739, 1 Am. St. Rep. 706; *The Ohio and Mississippi R. W. Co. v. Dickerson,* 59 Ind. 317; *Whitehead v. The St. Louis, I. M. & S. Ry.*

*Co.,* 99 Mo. 263, 11 S. W. 751, 6 L. R. A. 409; *Dodge v. Boston & Bangor Steamship Co.,* 148 Mass. 207, 19 N. E. 373, 2 L. R. A. 83, 12 Am. St. Rep. 541.)

The trial court may have given these instructions upon the supposition that the language used included all the conditions above suggested. In the case from which the instruction was taken the court doubtless so understood it. But we think as an instruction to a jury the language is misleading and likely to give the jury an erroneous idea of the law applicable to such cases, when used without modification or explanation, as was done in this case.

The judgment is reversed, with direction to grant a new trial and proceed with the case in accordance with the views herein expressed.